UNITED STATES COURT OF INTERNATIONAL TRADE
BEFORE:  HONORABLE MARK A. BARNETT, CHIEF JUDGE

| | |
|---|---|
| Pastificio Gentile S.r.l., <br><br>              Plaintiff, <br><br>    v. <br><br> United States, <br><br><br>              Defendant. | Court No. 24-00037 |

## MEMORANDUM OF LAW IN SUPPORT OF THE RULE 56.2 MOTION OF PLAINTIFF PASTIFICIO GENTILE S.R.L., FOR JUDGMENT UPON THE AGENCY RECORD

David J. Craven, Esq.
CRAVEN TRADE LAW LLC
3744 N Ashland Avenue
Chicago, Illinois 60613
Tel. 773-709-8506
David.craven@tradelaw.com
     Counsel for Plaintiffs

Dated: September 4, 2024

Table of Contents

Table of Contents ........................................................................................i

Table of Authorities ................................................................................ ii

I.    INTRODUCTION ......................................................................1

II.   STATEMENT PURSUANT TO RULE 56.2(c) ........................2

      A.    Administrative Determination Under Review .......................2

      B.    Issues of Law ..................................................................2

      C.    Summary of Arguments ....................................................3

      D.    Statement of Facts ..........................................................4

III.  STANDARD OF REVIEW .........................................................6

IV.   ARGUMENT ..............................................................................9

      A.    The Taking of Total Adverse Inferences was not Appropriate ............9

      B.    Gentile Did Report the Purportedly Unreported Entity......................12

      C.    The Department Should not Have Terminated the Verification .........13

      D.    The Department Cannot Deny the Minimal Nature of the Entities ....14

      E.    The Selected Rate was not Reasonable ...............................17

      F.    The Selected Facts Must have a Relationship to Reality ...................20

      G.    The Department Must Consider the Magnitude of the Error and the
            Impact on the Results .........................................................22

V.    CONCLUSION.............................................................................31

TABLE OF AUTHORITIES

## Court

*Alcan Aluminum, Corp. v. United States*, 165 F.3d 898 (Fed.Cir.1999) ................10

*Atlantic Sugar, Ltd. v. United States*, 744 F.2d 1556 (Fed. Cir. 1984) ................8,9

*Austin v. United States*, 509 U.S. 602 (1993) ...................................................27, 28

*Bestfoods v. United States*, 110 F.Supp. 2d 965 (Ct. Int'l Trade 2000) .................10

*BFI, Inc. v. Kelco Disposal, Inc.*, 492 U.S. 257 (1989)..........................................25

*Canada Dry Ginger Ale, Inc. v. United States*, 43 Cust. Ct. 1, C.D.2094, (1959)..........................................................................................................10

*Chaparral Steel Co. v. United States*, 901 F. 2d 1097 (Fed. Cir. 1990)................ 23

*Chevron U.S.A. Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837 (1984)..........................................................................................................6,7

*Consolidated Edison Corp. v. Labor Board*, 305 U.S. 197(1938) ...........................8

*Diamond Sawblades Manufacturers' Coalition v. United States*, 986 F.3d 1351 (Fed. Cir. 2021) ...............................................................17

*Diversified Products Corp. v. United States*, 6 CIT 155 (1983) ..............................8

*Dorbest Ltd v. United States*, 462 F. Supp. 2d 1262, (Ct. Int'l Trade 2006) .........................................................................................................9

*F.Lli De Cecco Di Filippo Fara S. Martino S.P.A. v. United States*, 216 F.3d 1027 (Fed. Cir. 2000) .............................................................15, 20, 24

*Gallant Ocean (Thailand) Co., Ltd. v United States*, 602 F.3d 1391 (Fed. Cir. 2010)...........................................................................................22

*Gerald Metals, Inc. v. United States*, 132 F.3d 716 (Fed. Cir. 1997) .....................9

*Jinan Yipin Corp. v. United States*, 637 F. Supp. 2d 1183 (Ct. Int'l Trade 2009).......................................................................................................9

*John S. Connor, Inc. v. United States*, 54 Cust. Ct. 213, C.D. 2536, (1965).......................................................................................................10

*Loper Bright Enterprises, et al., Petitioners, v. Gina Raimondo, Secretary of Commerce, et al.* 144 S.Ct. 2244 (June 28, 2024) ...................6

*Mueller Com. De Mex., S. De RL De CV v. United States*, 753 F. 3d 1227 (Fed. Cir. 2014)...........................................................................24, 25

*NTN Bearing Corp. v. United States*, 74 F. 3d 1204 (Fed. Cir. 1995) ............17, 23

*Overton & Co. v. United States*, 5 U.S. Cust.App. 183 (1914) ..............................10

*Rhone Poulenc, Inc. v. United States*, 899 F.2d 1185 (Fed. Cir. 1990)...................17

*R.W. Gresham v. United States*, 3 Cust. Ct. 308, C.D. 263, (1939) .......................10

*United States v. Bajakajian*, 524 U.S. 321 (1998)............................................25, 28

*United States v. Halper*, 490 U.S. 435 (1989) .........................................................27

*Universal Camera Corp. v. NLRB*, 340 U.S. 474 (1951) ...........................................8

*USX Corp. v. United States*, 11 CIT 82 655 F. Supp. 487 (1987)............................8

*Varsity Watch Co. v. United States*, 34 C.C.P.A. 155, C.A.D. 359, (1947).....................................................................................................................10

*Yangzhou Bestpak Gifts & Crafts Co. v. United States*, 716 F.3d 1370 (Fed. Cir. 2013)........................................................................................................17

*Zhejiang DunAn Hetian Metal Co., Ltd. v. United States*, 652 F.3d 1333 (Fed. Cir. 2011)........................................................................................................17

**Statute and Regulation**

U.S. Constitution, Amendment VIII ................................................................passim

19 U.S.C. § 1516a (a)(2)(B)(iii) ..................................................................................2

19 U.S.C. §1516a(b) ....................................................................................................6

19 USC 1592(c)(2).....................................................................................................30

19 U.S.C. §1673d(c)(5)................................................................................................6

19 U.S.C. 1677e .................................................................................................18, 22

19 U.S.C. § 1677e(c)..................................................................................................24

19 U.S.C. 1677e (d) (3) .............................................................................................22

19 U.S.C. 1677m (e) ...........................................................................................13, 19

 19 U.S.C. § 3512(d) .................................................................................................18

H.R. Doc. No. 103-316, vol. 1, at 869 (1994), *reprinted in* 1994 U.S.C.C.A.N. 4040, 4179.........................................................................................18

77 Fed. Reg. 69793 (November 21, 2012) ...............................................................21

79 Fed. Reg. 12154 (March 4, 2014) ........................................................................21

80 Fed. Reg 11172 (March 2, 2015) .........................................................................21

81 Fed. Reg. 8918 (February 23, 2016) ....................................................................21

82 Fed. Reg. 48060 (October 16, 2017) ...................................................................21

83 Fed.Reg. 64329 (Dec. 14, 2018) .........................................................................21

## Other

Rule 3.3 of the Rules of Professional Responsibility ...........................................16

*Black's Law Dictionary*, Seventh Ed.1999 .......................................................10, 25

## I.    INTRODUCTION

This is an appeal from the final results of the administrative review of the countervailing duty order on *Certain Pasta from Italy* (C-475-819). Plaintiff Pastificio Gentile S.r.l. ("Gentile") was a mandatory respondent in the review. Gentile was a party to the proceeding, having submitted numerous questionnaire responses and comments, as well as case briefs.

Plaintiff asserts the following errors in the Commerce Department's ("Commerce" or "The Department") final determination:

- The Department's decision to take total adverse inferences and calculate the margin based on total adverse facts is not supported by the record. The information purportedly withheld in the responses was minor in nature, had no impact on the calculation of the margin and thus no important information was withheld.
- The Department's determination to terminate the verification was unreasonable. The Department's failure to complete the verification prevented the Department from confirming the minor nature of the omission and the accuracy of the significant quantity of information submitted.
- The Department's calculated margin based on adverse facts is a significant overstatement of the maximum margin that could apply, including amounts for contradictory programs that cannot exist at the same time.
- The purpose of AFA is to deter non-cooperation, not to damage or destroy a company by the application of excessive tariffs. The rate applied in this review are excessive and not reasonably reflecting the rate that would have applied plus a reasonable amount for deterrence. While the statute has been amended to direct that the Agency is not required to take into account the rate that would have resulted nor whether the rate exceeds commercial reality, such statute must be read in conjunction with the U.S. Constitution, and to the extent that the interpretation of the statute and the Constitution are in conflict, the Constitution prevails  In this case, the 8th amendment requires that punishment be reasonably related to the conduct being punished.

## II.    STATEMENT PURSUANT TO RULE 56.2(c)

### A.    *Administrative Determination Under Review*

This action is brought pursuant to 19 U.S.C. § 1516a (a)(2)(B)(iii) to contest the final results of Commerce's §751 administrative review of the countervailing duty order on *Certain Pasta from Italy* (C-475-819)(89 Fed. Reg. 3382 (January 18, 2024) as amplified by the Issues and Decision Memorandum.

In the Final Results, Commerce calculated a margin of 88.67% for plaintiff Gentile based on the taking of adverse inferences and an application of total adverse facts. (PD 124)[1]

### B.    *Issues of Law*

The Plaintiffs present the following issue of law.

1. Whether the Department's Taking of Total Adverse Inferences was appropriate in light of the substantial cooperation of Gentile.

2. Whether the Department's termination of the verification prior to its completion was lawful.

---

[1] The record is identified as "PD" for Public Documents and "BPID" for Business Proprietary Documents.

2

3.  Whether the 8th Amendment of the U.S. Constitution requires that a margin calculated based on adverse facts be reasonably related to the conduct which triggered the application of adverse facts.

### C.    Summary of Arguments

- The Department's taking of total adverse inferences was not appropriate. The purported "bad" conduct was minimal and the taking of such total adverse inferences was a significant overreach.

- The Department's finding that Gentile did not report the purportedly unreported entity did not take into account all of the facts.

- The Department's termination of the verification on the second of a three day verification was not reasonable.

- The Department cannot deny the minimal nature of the entities.

- The rate selected by the Department was not reasonable and the selected rate must have a relationship with reality. Under the 8th Amendment of the U.S. Constitution, any assessment which has a deterrence component must be evaluated to determine the assessment is proportional to the conduct which is to be corrected.

D.    *Statement of Facts*

This appeal concerns the 2021 administrative review. See    *Initiation of Antidumping and Countervailing Duty Administrative Reviews* 87 Fed. Reg. 54,463 (September 6, 2022)(PD 10). In the segment of the proceeding under appeal, Commerce issued its preliminary results as *Certain Pasta from Italy: Preliminary Results and Partial Rescission of Countervailing Duty Administrative Review; 2021*, 88 Fed. Reg 45,886 (July 18, 2023) (PD 98). Commerce calculated a preliminary rate of 1.79% for Gentile. In the final results, the Department determined to calculate the margin with the application of total facts available and the taking of adverse inferences. Commerce's Final Results and final IDM (PD 125) were issued as set forth in the "Administrative Determination Under Review," *supra* and such results calculated a rate of 88.67% for Gentile.

On September 6, 2022 the Department initiated the Administrative Review underlying this matter.  See *Initiation of Antidumping and Countervailing Duty Administrative Reviews,* 87 Fed. Reg. 54,463 (September 6, 2022) (PD 10).

During the course of the administrative review, plaintiffs submitted responses to the Department's questionnaires.  Plaintiffs fully and completely responded in a

4

timely fashion to all questionnaires and supplemental questionnaires issued by the Department.

On July 18, 2023 the Department published the preliminary results for the administrative review.   See *Certain Pasta from Italy: Preliminary Results and Partial Rescission of Countervailing Duty Administrative Review: 2021,* 88 Fed. Reg. 45,886 (July 18, 2023) Commerce calculated a preliminary rate of 1.79% for Plaintiff Gentile. (PD 98).

On October 23, 2023 the Department started to conduct a verification of the information submitted by Gentile.  This verification was scheduled to be held on October 23 through October 25. (PD 106).  On October 24, 2023, the second day of verification, and upon ascertaining that certain data for certain small technically related entities was not submitted, the Department did not complete the verification, did not verify the substantial information presented therein, nor verify the claim in the affiliated parties response that Gentile had properly reported the necessary data from all parties. (PD 113)

On November 3, 2023 the Department issued its verification report. (PD 113)

On November 27, 2023 Gentile filed its administrative case brief in this matter. (PD 122)

5

On January 18, 2024 the Department issued the final results. (PD 124)

## III.    STANDARD OF REVIEW

The Court will hold unlawful Commerce determinations that are unsupported by substantial evidence on the record or are not otherwise in accordance with law. 19 U.S.C. §1516a(b). At one time, in order to determine whether Commerce's interpretation and application of 19 U.S.C. §1673d(c)(5) is "in accordance with law," the courts reviewed the statute to determine whether "Congress has directly spoken to the precise question at issue." *Chevron U.S.A. Inc. v. Natural Res. Def. Council, Inc.,* 467 U.S. 837, 842 (1984).   This doctrine was recently summarized by the U.S. Supreme Court as follows:

> Our *Chevron* doctrine requires courts to use a two-step framework to interpret statutes administered by federal agencies. After determining that a case satisfies the various preconditions we have set for *Chevron* to apply, a reviewing court must first assess "whether Congress has directly spoken to the precise question at issue." *Id.,* at 842. If, and only if, congressional intent is "clear," that is the end of the inquiry. *Ibid.* But if the court determines that "the statute is silent or ambiguous with respect to the specific issue" at hand, the court must, at *Chevron*'s second step, defer to the agency's interpretation if it "is based on a permissible construction of the statute." *Id.,* at 843. The reviewing courts in each of the cases before us applied *Chevron*'s framework to resolve in favor of the Government challenges to the same agency rule.

6

*Loper Bright Enterprises, et al., Petitioners, v. Gina Raimondo, Secretary of Commerce*, et al.  144 S.Ct. 2244, 2254 (June 28, 2024)

The concept of *Chevron* deference was overturned by *Loper Bright Enterprises et. al. v. Raimondo*, 144 S.Ct. 2244 (2024).  The Supreme Court stated:

> The deference that *Chevron* requires of courts reviewing agency action cannot be squared with the APA.

*Loper* at 2249.

The Supreme Court summed  up the *Loper* decision by stating:

> *Chevron* is overruled. Courts must exercise their independent judgment in deciding whether an agency has acted within its statutory authority, *Chevron* is overruled. Courts must exercise their independent judgment in deciding whether an agency has acted within its statutory authority, as the APA requires. Careful attention to the judgment of the Executive Branch may help inform that inquiry. And when a particular statute delegates authority to an agency consistent with constitutional limits, courts must respect the delegation, while ensuring that the agency acts within it. But courts need not and **under the APA may not defer to an agency interpretation of the law simply because a statute is ambiguous**.

*Loper* at 2273.

While *Loper Bright* is a new precedent, and to the best of counsel's knowledge has not yet been addressed by the Court of International Trade, it is clearly relevant where, as here, Commerce has claimed that the statute contains a gap or ambiguity and has sought to fill the gap or ambiguity in the statute.

Substantial evidence is "more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 477 (1951), *quoting Consolidated Edison Corp. v. Labor Board*, 305 U.S. 197, 229 (1938).  Furthermore, "substantial evidence" must be measured by the record as a whole, "including whatever fairly detracts from the substantiality of the evidence."  *Atlantic Sugar, Ltd. v. United States*, 744 F.2d 1556, 1562 (Fed. Cir. 1984) (quotations omitted).  Thus, "it is appropriate to set aside the ITA's decision when the court 'cannot conscientiously find that the evidence supporting that decision is substantial, when viewed in the light that the record in its entirety furnishes, including the body of evidence opposed to {that} view.'" *Diversified Products Corp. v. United States*, 6 CIT 155, 161 (1983) *quoting Universal Camera*, 340 U.S. at 488.

Moreover, Commerce's determination cannot be based on "isolated tidbits of data which suggest a result contrary to the clear weight of the evidence."  *USX Corp. v. United States*, 11 CIT 82, 84, 655 F. Supp. 487, 489 (1987).  The substantial evidence standard requires more than mere assertion of 'evidence which in and of itself justified {the determination}, without taking into account contradictory

evidence or evidence from which conflicting inferences could be drawn.'" *Gerald Metals, Inc. v. United States*, 132 F.3d 716, 720 (Fed. Cir. 1997) (citation omitted).

Commerce also must make its decisions based on a fair and balanced comparison of the data.  To do otherwise is arbitrary and capricious. *See Atlantic Sugar, Ltd. v. United States*, 744 F.2d at 1562 ("substantial evidence" must be measured by the record as a whole, "including whatever fairly detracts from the substantiality of the evidence.")  *See also, Jinan Yipin Corp. v. United States*, 637 F. Supp. 2d 1183, 1192 (Ct. Int'l Trade 2009).

Commerce is required to objectively evaluate all data on the record.  Thus, the agency must hold its preferences to the same test as it uses to evaluate respondent's proffered data.  *See, e.g., Dorbest Ltd v. United States*, 462 F. Supp. 2d 1262, 1302 (Ct. Int'l Trade 2006) (holding that Commerce must justify its decisions).

## IV.  ARGUMENT

### A.    *The Taking of Total Adverse Inferences was not Appropriate*

The sole basis for the application of FA and the taking of total adverse inferences in this matter was the non-reporting of a couple of small entities not involved in the production of pasta nor involved in the export of pasta from Italy in the Affiliated Parties response.(PD 125) As discussed below, these entities were

9

referenced in the responses, but not in the Affiliated Parties Response.   The application of AFA was, therefore, a significant overreach.

A fundamental principle of law is that of *De Minims Non Curat Lex* which is translated as *the Law does not govern trifles*.   While this has not been frequently applied in the context of antidumping and countervailing duty, it is a fundamental maxim (and as discussed below is also reflected in the proportionality requirements of the 8th amendment) which has been recognized by the Court of International Trade.   In *Bestfoods v. United States,* 110 F.Supp. 2d 965 (Ct. Int'l Trade 2000) the Court stated:

> The prin[ci]ple of *de minimis non curat lex*, often shortened to *de minimis*, is long established in law generally, including customs and international trade law, and is a bedrock principle of statutory construction. See *Alcan Aluminum, Corp. v. United States*, 165 F.3d 898 (Fed.Cir.1999) ("Alcan") and cases cited. See also *Varsity Watch Co. v. United States*, 34 C.C.P.A. 155, C.A.D. 359, 1947 WL 5096 (1947); *Overton & Co. v. United States*, 5 U.S. Cust.App. 183 (1914); *John S. Connor, Inc. v. United States*, 54 Cust. Ct. 213, C.D. 2536, 1965 WL 8790 (1965); *Canada Dry Ginger Ale, Inc. v. United States*, 43 Cust. Ct. 1, C.D.2094, 1959 WL 8882 (1959); and *R.W. Gresham v. United States*, 3 Cust. Ct. 308, C.D. 263, 1939 WL 6153 (1939). The principle simply means that the law does not concern itself with trifles, *see also Black's Law Dictionary*, Seventh Ed.1999, page 443, and has been applied in a variety of statutory contexts.
> *Bestfoods* at 967-968

10

In this case, the Department detected a minor flaw - the unreporting of two small entities in the affiliated parties response that would not have been required to submit a full questionnaire response and were not listed in the affiliated parties response as required to file a response.   Gentile properly stated that the only entity required to file a response was Gentile.  (BPID 50, PD 113) Such other entities did not meet any of the criteria for reporting by cross-owned companies and thus the statement in the Affiliated Parties that only Gentile needed to be reported was accurate.  (BPID 5, PD 32) It was harmless error and the fact that it was harmless error could easily have been confirmed by the Department at verification.   The Department, although presented with information showing the minor nature of the companies and that the statement that only Gentile was required to provide a response was accurate, refused to accept, let alone review, the information which established that this was a minor flaw in reporting, and then terminated the verification leading to the apparent conclusion that based on such minor flaw the company was not cooperative.   If the Department were to apply AFA in this case, it  ouldd be particularly offensive as the record establishes that any subsidies received by Gentile, the mandatory respondent, were minimal, and a significant

11

portion of the subsidies calculated in the preliminary results were in fact, calculated in error.

Gentile submits that the Department cannot take a minor error, "inflate the size of the error" by purposefully ignoring proffered information establishing the minor nature of the error, and then impose significant punishment for the minor error in the form of high margins.

### B.    Gentile Did Report the Purportedly Unreported Entity

The Department failed to take into account that while these small entities were not specifically disclosed in the affiliated parties responses, they were disclosed in the responses.   In Exhibit CVD-10, the entity [Il Gentile San Lorenzo Srl] was disclosed along side of Pastificio Gentile and Forno Gentile. (BPID 14).   In exhibit S-6a both of the "unreported" entities were disclosed [(Il Gentile San Lorzenzo Srl and Club Gourmet)] showing the very small value of these entities.  (BPID 18) In Exhibit S-7a the entity [Il Gentile San Lorenzo Srl] was disclosed along side of Pastificio Gentile and Forno Gentile.  (BPID 19) Critically, the response to the question which generated Exhibit S-7a was based on the response related to Exhibit CVD-10.    The second set of references were made in the first supplemental questionnaire, and as the Department sent a second supplemental questionnaire the

Department had time to ask about these entities and was presumptively aware of the data.

In other words, the Department not only had information provided to it about these entities, the Department asked questions relating to the references to these entities, but did not ask about these entities. The Department had this information before it, and did not ask any questions until verification. While this does not "excuse" the failure to identify the entities in the initial response, this is clear evidence that the Department was, or should have been, aware of the unreported entities and asked questions about such entities. The appropriate response would have been to fill the gaps with neutral facts available.

C.    *The Department Should Not Have Terminated the Verification*

The Department refused to complete the verification. This refusal to complete the verification was an over-reaction on the part of the Department and an abuse of discretion. The verification was only scheduled for 3 days, (PD 106) and the Department terminated the verification on the second day of verification and did not report the information or take the verification exhibits for the information which had already been verified prior to termination. (BPID 49 and 50) The Department was well-aware during verification of the minimal nature of the error, and the lack

of the impact of this purported error on all of the other information presented by Gentile. By not completing the verification of the other information, it prevented the Department from confirming the other information submitted, from making an accurate determination, and complying with the requirement that the Department calculate an accurate margin. This effectively foreclosed Gentile the opportunity to prove the accuracy of the voluminous information submitted by Gentile. Critically, by terminating verification, the Department is unable to determine whether or not the information can be verified as required by 19 U.S.C. 1677m (e). The refusal of the Department to complete verification was an abuse of discretion, particularly where, as here, a significant portion of the verification had already been completed. Accordingly, for purposes of this Court action, the Court should presume that all information submitted by Gentile was verified.

### D. The Department Cannot Deny the Minimal Nature of the Entities

While the Department did not take the proffered material establishing the minimal nature of these entities, and thus this information is not directly of record[2], this does not mean that the Department can now assert that such participation was

---

[2] The information was presented at verification, but the Department did not take this information.

substantial, or even non-minimal.  Quite to the contrary, the Department is precluded from making such assertions and thus must acknowledge the minimal nature of the participation.  As noted by the Court of International Trade in *F.Lli De Cecco Di Filippo Fara S. Martino S.P.A. v. United States*, 216 F.3d 1027 (Fed. Cir. 2000) a key part of the calculation of antidumping and countervailing duties that of accuracy. The Court stated:

> Thus, we are convinced that it is within Commerce's discretion to choose which sources and facts it will rely on to support an adverse inference when a respondent has been shown to be uncooperative. Particularly in the case of an uncooperative respondent, Commerce is in the best position, based on its **expert knowledge of the market and the individual respondent**, to select adverse facts that will create the proper deterrent to non-cooperation with its investigations and assure a **reasonable margin**. Commerce's discretion in these matters, however, is not unbounded.
> *DeCecco* at 1032 (Emphasis Added)

If the Department is permitted to "manipulate" the record by deciding what information it will place on record and what information it will not place on record, it would render the entire AD/CVD process a farce.  The Department must consider all facts presented and fairly report the results of such review.  Permitting the Department to reject certain facts, precludes the Department from conducting a full

review.   The Department had the relevant information and cannot turn a blind eye to this by refusing to place such information on the record.

 Furthermore, the Department of Justice cannot knowingly assert facts that it knows not to be true, even if such evidence has not been placed on the record.  This is a well-established maxim that a lawyer must be truthful in dealings with the tribunal.   This duty is reflected in the Rules of Professional Responsibility.  Rule 3.3 of the Rules of Professional Responsibility provides in relevant part:

(a) A lawyer shall not knowingly:

* * *

(3) **offer evidence that the lawyer knows to be false**. If a lawyer, the lawyer's client, or a witness called by the lawyer, has offered material evidence and the lawyer comes to know of its falsity, the lawyer shall take reasonable remedial measures, including, if necessary, disclosure to the tribunal. A lawyer may refuse to offer evidence, other than the testimony of a defendant in a criminal matter, that the lawyer reasonably believes is false.

As such, the Department of Justice in this proceeding cannot assert that such entities are significant.   This is important as the minimal nature of the omitted entities must be taken into account in the selection of adverse facts.

16

*E.    The Selected Rate Was Not Reasonable*

While the Department is granted a high degree of discretion in selecting the information to be used as "adverse facts", this discretion is not unlimited.  *DeCecco* at 1032. It has long been held that adverse facts which are highly distorted and bear no reasonable relationship to reality should not be selected.  Quite to the contrary, a critical, if not overriding, factor to be considered by the Department is that of accuracy.  (See *NTN Bearing Corp. v. United States*, 74 F.3d 1204 (Fed. Cir. 1995), *Rhone Poulenc, Inc. v. United States*, 899 F.2d 1185 (Fed. Cir. 1990). In *Diamond Sawblades Manufacturers' Coalition v. United States*, 986 F.3d 1351 (Fed. Cir. 2021) the Court stated:

> We have explained that "{a}n overriding purpose of Commerce's administration of antidumping laws is to calculate dumping margins as accurately as possible." *Yangzhou Bestpak Gifts & Crafts Co. v. United States,* 716 F.3d 1370, 1379 (Fed. Cir. 2013) (citing *Rhone Poulenc, Inc. v. United States,* 899 F.2d 1185, 1191 (Fed. Cir. 1990)); *see also Mid Continent Steel,* 941 F.3d at 542. More particularly, we have often focused, when applying § 1677e(a), on the subsection's role as a command to Commerce "to fill a gap in the record" when information is missing or compromised. *Zhejiang DunAn Hetian Metal Co., Ltd. v. United States,* 652 F.3d 1333, 1348 (Fed. Cir. 2011); *see also Nippon Steel,* 337 F.3d at 1381. To the extent that information supplied is reliable, *i.e.,* not in fact tainted by its supplier's conduct, "gap" seems an inapt characterization. And the authoritative Statement of Administrative Action, *see* 19 U.S.C. § 3512(d), states that subsection 1677e(a) pertains to situations "where requested information is missing

17

from the record or cannot be used because, for example, it has not been provided, it was provided late, or Commerce could not verify the information," and when needed information is missing, Commerce "**must make {its} determinations based on all evidence of record, weighing the record evidence to determine that which is most probative of the issue under consideration**," H.R. Doc. No. 103-316, vol. 1, at 869 (1994), *reprinted in* 1994 U.S.C.C.A.N. 4040, 4179. **That explanation, on its own, suggests an information-specific consideration of probativeness rather than any blanket disregard of all information supplied by a person whenever some of the information supplied by that person is unreliable.**
*Diamond Sawblades* at 1365 (Emphasis Added)

In this case, the Department must take into account the preliminary results and the significant volume of information supplied, including original source documents, which establish that a properly calculated rate for Gentile would be under 2%. There is no information of record raising any questions about the accuracy and completeness of the Section III response and the supplemental questionnaire responses submitted by Gentile. Such information was also supported by the verified responses of the Government of Italy.(BPID 51) The Department had no issues with the verification conducted of the Government of Italy. If the Department decides to take adverse inferences, which we submit it should not, it must take all of this information into account in calculating such rate. Critically, the use of such information is required by statute.

The statute provides that this information should have been used.  19 U.S.C.

1677m (e) provides:

> **(e)USE OF CERTAIN INFORMATION** In reaching a determination under
> section 1671b, 1671d, 1673b, 1673d, 1675,  or 1675b of  this   title
> the administering  authority and  the Commission shall  not  decline  to
> consider  information  that is  submitted  by  an  interested  party and  is
> necessary  to  the  determination  but  does  not  meet  all  the  applicable
> requirements    established    by    the administering    authority or
> the Commission, if—
> **(1)** the  information  is  submitted  by  the  deadline  established  for  its
> submission,
> **(2)** the information can be verified,
> **(3)** the information is not so incomplete that it cannot serve as a reliable
> basis for reaching the applicable determination,
> **(4)** the interested party has demonstrated that it acted to the best of its
> ability  in  providing  the  information  and  meeting  the  requirements
> established  by  the administering  authority or  the Commission with
> respect to the information, and
> **(5)** the information can be used without undue difficulties.
> 19 U.S.C. 1677m(e)

All  of  the  information  supplied  by  Gentile  met  each  of  these  tests.    The

information was submitted by the deadline for submission of such information.   The

information submitted could be verified.  That the Department elected not to verify

this information, does not mean that it could not be verified, and in fact, certain of

this information had already been verified by the Department prior to the termination

of  the  verification,  but  the  Department  did  not  include  this  in  its  report.     The

19

information was complete and could serve as a reliable basis for making a determination as evidenced by the preliminary determination based on such information.   There was no issue that the information needed to make the determination was complete and the completeness of such information is *prima facie* evidence of cooperation.   There are no impediments to the use of this information. At a bare minimum, it must be used to temper the AFA margin.

In sum, such information can be used.  There is no good reason, at a bare minimum, to refuse to consider such information in determining appropriateness of the selected facts.

### F.    The Selected Facts Must have a Relationship to Reality

It is axiomatic that "the purpose of section 1677e(b) is to provide respondents with an incentive to cooperate, not to impose punitive, aberrational, or uncorroborated margins."  *F.lli De Cecco Di Filippo Fara S. Martino S.p.A. v. United States*, 216 F.3d 1027, 1032 (Fed. Cir. 2000).    In *De Cecco* the Federal Circuit held that an assigned rate is punitive where it is "unjustifiably high" (i.e., aberrational), and where it is uncorroborated by the administrative record.  Under the statute, the AFA rate must be supported by substantial evidence.   The only evidence of record is that it is not supported.

20

Gentile notes that the margins calculating in this order for the past 12 years have been consistently low.    The following chart lists the final results from the Federal Register for the completed reviews from the 2010 POR to the 2020 POR.

| POR | Company | Rate | FR Cite |
|---|---|---|---|
| 1/1/16 – 12/31/16 | GR.A.M.M. S.r.l. | 1.18% | 83 Fed.Reg. 64329 (Dec. 14, 2018) |
| 1/1/15 – 12/31/15 | Ligouri Pasitificio dal 1820 S.p.A | 1.62% | 82 Fed. Reg. 48060 (October 16, 2017) |
| 1/1/13 – 12/31/13 | DeMatteis Agroalimentare S.p.A | 2.12% | 81 Fed. Reg. 8918 (February 23, 2016) |
| 1/1/13 – 12/31/13 | La Molisana S.p. A. | 0.26% | 81 Fed. Reg. 8918 (February 23, 2016) |
| 1/1/12 – 12/31/12 | DeMatteis Agroalimentare S.p.A | 1.72% | 80 Fed. Reg 11172 (March 2, 2015) |
| 1/1/12 – 12/31/12 | Fratelli DeCecco di Filippo Fara San Martino S.p.A | 0.19% | 80 Fed. Reg 11172 (March 2, 2015) |
| 1/1/12 – 12/31/12 | Ghigi Industria Agroalimentare in San Clemente srl  (Assigned) | 1.72% | 80 Fed. Reg 11172 (March 2, 2015) |
| 1/1/12 – 12/31/12 | Pasta Granoro S.r.L (Assigned) | 1.72% | 80 Fed. Reg 11172 (March 2, 2015) |
| 1/1/12 – 12/31/12 | Valdigrano di Flavio Pagani S.r.L (Assigned) | 1.72% | 80 Fed. Reg 11172 (March 2, 2015) |
| 1/1/11 – 12/31/11 | Delverde Industrie Alimentari S.p.A.. | 0.42% | 79 Fed. Reg. 12154 (March 4, 2014) |
| 1/1/11 – 12/31/11 | Molino e Pastificio Tomasello S.p.A.. | 1.83% | 79 Fed. Reg. 12154 (March 4, 2014) |
| 1/1/11 – 12/31/11 | Valdigrano di Flavio Pagani S.r.L. | 0.35% | 79 Fed. Reg. 12154 (March 4, 2014) |
| 1/1/10 – 12/31/10 | Molino e Pastificio Tomasello S.p.A | 2.49% | 77 Fed. Reg. 69793 (November 21, 2012) |
| Simple Average | | 1.21% | |

This chart shows that calculated margins ranged from 2.49% to de minimis, with 4 of the 10 calculated margins at the level of de minimis.  The average of these

margins was 1.21%. The Department should take into account these rates when determining what constitutes an appropriate margin. Gentile submits that the selected rate should be no higher than the 2.49% rate calculated in the review for FY 2010, and that the method of calculation used by the Department which presumed a usage of every possible program by a respondent, is abusive, particularly where, as here, the non-usage of certain programs was confirmed in the verification and responses of the Government of Italy, (BPID 6 – 9, 28 -29, and 35 – 41) and runs directly contrary to unchallenged and consistent information supplied by Gentile in its responses.

G.    *The Department Must Consider the Magnitude of the Error and the Impact on the Results*

While 19 U.S.C. 1677e has been amended by the insertion of 19 U.S.C. 1677e (d) (3) as a result of the Court decision in *Gallant Ocean (Thailand) Co., Ltd. v United States* 602 F.3d 1391 (Fed. Cir. 2010), and the Department no longer required to take into account what would have resulted if AFA had not been applied. It is critical to note that the Department is allowed to do so, it is only no longer required to do so. This also does not mean that the Department can ignore the rate that would have otherwise applied, and in fact, in this case, the Department should

take such rate into account.   Specifically, the 8th amendment of the U.S. Constitution requires that Department to consider the degree of non-cooperation and the proportionality of such non-cooperation to the imposed duties.  Furthermore, nothing in the statute takes away from the Department's responsibility to calculate an accurate margin, albeit with a reasonable additional amount as deterrence.

It is well settled that **ordinary** trade duties are remedial in nature.  (See *NTN Bearing Corp. v. United States*, 74 F. 3d 1204, 1208 (Fed. Cir. 1995), *Chaparral Steel Co. v. United States*, 901 F. 2d 1097 (Fed. Cir. 1990).)  While at first glance, this would appear to inoculate all trade duties from any review under the 8th Amendment, such inoculation would be contrary to established precepts of Constitutional law.    Simply put, it is **not** the application of trade Duties which triggers review under the 8th Amendment, it is the application of trade Duties **based on adverse inferences** which triggers such review.

The first question is whether the additional duties are more than remedial in nature, for if they are only remedial, the 8th amendment does not apply.   The Department has readily acknowledged that the purpose of AFA is more than just remedial, it also includes a degree of deterrence.   The duties are higher to force compliance with the requests and to punish non-compliance with the requests.

23

Accordingly, the taking of adverse inferences is based on multiple policy considerations **including, critically, deterrence**. In *F. Lli De Cecco Di Filippo Fara S. Martino v. United States*, 216 F. 3d 1027 (Fed. Cir. 2000) the Court stated:

> Particularly in the case of an uncooperative respondent, Commerce is in the best position, based on its expert knowledge of the market and the individual respondent, to select adverse facts that will create the proper **deterrent** to non-cooperation with its investigations and assure a reasonable margin. Commerce's discretion in these matters, however, is not unbounded.

> As the Court of International Trade pointed out in its decision following Commerce's Remand Redetermination, the purpose of section 1677e(b) is to provide respondents with an incentive to cooperate, not to impose punitive, aberrational, or uncorroborated margins. It is clear from Congress's imposition of the corroboration requirement in 19 U.S.C. § 1677e(c) that it intended for an adverse facts available rate to be a reasonably accurate estimate of the respondent's actual rate, **albeit with some built-in increase intended as a deterrent to non-compliance**. *DeCecco* at 1032. (Citations Omitted)

> In *Mueller Com. De Mex., S. De RL De CV v. United States*, 753 F. 3d 1227

(Fed. Cir. 2014) the Court stated:

> Commerce's second rationale rested on policy considerations unrelated to accuracy of the determination to be made on the already-developed record. Commerce found that Mueller could and should have induced Ternium's cooperation by refusing to do business with Ternium, and Ternium would not be sufficiently **deterred** if Mueller were unaffected by Ternium's non-cooperation, stating that Ternium could otherwise evade its antidumping rate by funneling its goods through Mueller. We conclude that Commerce may rely on such policies as part of a margin

24

determination for a cooperating party like Mueller, as long as the application of those policies is reasonable on the particular facts and the predominant interest in accuracy is properly taken into account as well. *Mueller* at 1233.

It is incontrovertible that a duty calculated by means of AFA has at least some "deterrence" and is more than "remedial" in nature.  This is an important distinction. Supreme Court precedent makes it clear that if one of the purposes of an exaction is deterrence, such exaction is not solely remedial and is thus, at least in part, penal in nature.  While the issue as to the applicability of the 8th Amendment to AD and CVD proceedings has never been directly addressed, the 8th Amendment has been found to apply to other assessments made at the time of importation, and in any event, the 8th Amendment is not limited in scope by its language.  The Supreme Court stated:

> Deterrence, however, has traditionally been viewed as a goal of punishment, and forfeiture of the currency here does not serve the remedial purpose of compensating the Government for a loss. See Black's Law Dictionary 1293 (6th ed. 1990) ("[R]emedial action" is one "brought to obtain compensation or indemnity"); One Lot Emerald Cut Stones v. United States, 409 U. S. 232 (1972) (per curiam) (monetary penalty provides "a reasonable form of liquidated damages," id., at 237, to the Government and is thus a "remedial" sanction because it compensates government for lost revenues).
> *United States v. Bajakajian,* 524 U.S. 321 (1998)

Since the purpose of the AFA provision in the trade laws is, at least in part, penal and is not solely remedial, the appropriateness of the relief and whether it is

25

excessive must be subject to analysis under the 8th Amendment in order to determine whether it is "excessive".

The underlying analysis under the 8th Amendment is not complicated and the language of the 8th Amendment is clear and unequivocal.  It states:

> Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted.
> U.S. Constitution, Amendment VIII

Thus, if an extraction or assessment is a fine, it must not be excessive and if it is excessive, it is in violation of the 8th Amendment and cannot stand.

The first step is to determine whether the extraction or assessment is a fine. This term has been broadly defined by the U.S. Supreme Court and is not limited to things specifically characterized as fines.  Rather the Supreme Court has taken the broad reading that a "Fine" is a payment to a sovereign as punishment for an offense. As noted by the Supreme Court:

> {w}e think it significant that, at the time of the drafting and ratification of the Amendment, the word "fine" was understood to mean a payment to a sovereign as punishment for some offense.
> *BFI, Inc. v. Kelco Disposal, Inc.*, 492 U.S. 257 (1989)

26

Any antidumping duty assessment based at least in part on adverse facts[3] is a payment to the Sovereign (the United States) as punishment for an offense. The U.S. Supreme Court has consistently held that the "Fines" clause applies to exactions which are at least partially penal in nature. In *United States v. Halper*, 490 U.S. 435 (1989) the Supreme Court held:

> To that end, the determination whether a given civil sanction constitutes punishment in the relevant sense requires a particularized assessment of the penalty imposed and the purposes that the penalty may fairly be said to serve. Simply put, a civil as well as a criminal sanction constitutes punishment when the sanction as applied in the individual case serves the goals of punishment.

*Halper* at 448.

The Supreme Court expanded upon this in *Austin v. United States* 509 *U.S.* 602 (1993) in which the Supreme Court held:

> Fundamentally, even assuming that §§ 881(a)(4) and (a)(7) serve some remedial purpose, the Government's argument must fail. "[A] **civil sanction that cannot fairly be said *solely* to serve a remedial purpose**, but rather can only be explained as also serving either retributive or **deterrent** purposes, **is punishment**, as we have come to understand the term." In light of the historical understanding of forfeiture as punishment, the clear focus of §§ 881(a)(4) and (a)(7) on

---

[3] The Constitutionality of the Antidumping Duty Laws generally is **not** being challenged nor is the application of AFA to an uncooperative party. The Constitutional Question goes solely to the application of duties based on adverse facts and whether they are proportional.

the culpability of the owner, and the evidence that Congress understood those provisions as serving to deter and to punish, we cannot conclude that forfeiture under §§ 881(a)(4) and (a)(7) serves solely a remedial purpose. We therefore conclude that forfeiture under these provisions constitutes "payment to a sovereign as punishment for some offense," and, as such, is subject to the limitations of the Eighth Amendment's Excessive Fines Clause.

*Austin*, 509 *U.S.* at 621 – 622 (Citations Omitted).

If the assessment is purely remedial in nature, such assessment is not a penalty or forfeiture. If it is not purely remedial, as in this case, such "fine" is punishment and thus is subject to the limitations of the Excessive Fines Clause of the 8th Amendment.

The second question is whether the duties are proportional and reasonable. The number of cases construing the 8th Amendment's Fines, Penalties and Forfeiture's clause are few. But the seminal case provides a definite standard for testing whether the fine is reasonable for the purposes of the 8th Amendment. The seminal case is *United States v. Bajakajian*, 524 U.S. 321 (1998). The Supreme Court stated:

The touchstone of the constitutional inquiry under the Excessive Fines Clause of U.S. Const. amend. VIII is the principle of proportionality. The **amount of the forfeiture must bear some relationship to the gravity of the offense that it is designed to punish**.
*United States v. Bajakajian*, 524 U.S. 321 (1998)

Furthermore, in determining the appropriate rates, and as discussed elsewhere in this case brief, it is clear that while an entity was not disclosed in the Affiliated parties response, it was in fact disclosed to the Department in the initial Section III questionnaire responses and the supplemental responses.   Further, evidence was proffered to the Department at verification that the entities that were not reported would not have been required to submit a full questionnaire response.  It was also clear that the entities not reported in the affiliated parties were small and, even if they had been required to report a full response, the reporting would have had minimal impact on the duties.  Even if a 100% duty was applied to the value of the sales of these small entities, the impact on the total margin would be minimal.  The Department must also take into account the low rate calculated in the preliminary results based on formal business documents and the minimal impact of the "omitted" information.

In this case, we have near perfect knowledge as to the rate which would have applied if the Department had not taken adverse inferences and applied adverse facts. The rate in question would have been 1.79% or lower.  The rate applied was 88.67%. Thus, the amount of "punishment" which goes beyond remedial is approximately 86%, or a multiple of more than 40 of the remedial portion of the duty.   The

29

Department should have, and the Court should now, consider whether a multiple of more than 40 times the correct rate bears any relationship to the gravity of the offense.

In this case, the offense is not "grave", and in fact, is slight. The offense at most, rose to the level of "negligence", something which the Customs Laws punish with a multiple of up to 2 times the revenue loss (19 USC 1592(c)(2)), and certainly did not rise to the level of "gross negligence", something which the Customs Laws punish with a multiple of up to 4 times the revenue loss. (19 U.S.C. 1592(c)(2)). Quite to the contrary, a penalty of 40 times shocks the conscious for what is, at most, a misunderstanding of the questionnaire and imperfect reporting.

As such, it is clear that:

- Antidumping and Countervailing duties imposed with the taking of adverse inferences and the use of adverse facts include both a remedial component and a deterrent (or penal) component.
- The 8th Amendment applies whenever an exaction is more than remedial and such exaction should be examined to determine if the exaction is disproportionate to the conduct being punished.
- An analysis under the 8th Amendment is thus required where duties are imposed using the taking of adverse inferences.
- The rate which would have applied is the appropriate surrogate to determine the portion of the rate which is remedial in nature, with the remainder serving as deterrence.
- In this case, the remedial portion of the rate is something less than 2% and thus the non-remedial portion would be 86%.

30

- A multiple of more than 40 times the remedial amount as deterrence is *per se* excessive and thus violative of the 8th amendment.

The resultant duty calculated was therefore not proportional to the conduct to be punished or deterred and thus is contrary to the limitations of the 8th Amendment and cannot stand.

## V.   CONCLUSION

Pastificio Gentile respectfully requests that this Court grant its motion for Judgment on the Agency Record and remand this case to Commerce with instructions consistent with the points set forth in this memorandum.  Specifically, the Court should find:

The taking of total adverse inferences was not appropriate.   To the extent that the responses were deficient, such deficiencies to not justify the application of total adverse facts.

Gentile did report the purportedly unreported identity in the response process, but the Department did not ask any questions about such entities.

The Department improperly terminated the verification and should have verified all of the information submitted by Gentile.

The selected rate was not reasonable and is excessive and not related to the conduct being deterred.  Under the 8th amendment of the U.S. Constitution, such rate is therefore improper.

By making these changes, the Court will correct clear errors made by the Department in the final results.


Respectfully submitted,

/s/ David J. Craven


David J. Craven
Counsel to Pastificio Gentile S.r.l.


Date September 4, 2024            Craven Trade Law LLC
                                 3744 N Ashland
                                 Chicago, IL 60613
                                 (773) 245-4010
                                 dcraven@craventrade.com