# IN THE UNITED STATES COURT OF INTERNATIONAL TRADE

BEFORE:  THE HONORABLE MARK A. BARNETT, CHIEF JUDGE

| | | |
|---|---|---|
| PASTIFICIO GENTILE S.R.L., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Court No. 24-00037 |
| | ) | |
| UNITED STATES, | ) | ████████████████ |
| | ) | |
| Defendant. | ) | |
| | ) | |

## DEFENDANT'S RESPONSE TO PLAINTIFF'S MOTION FOR JUDGMENT UPON THE AGENCY RECORD

Respectfully submitted,

BRETT A. SHUMATE
Acting Assistant Attorney General

PATRICIA M. McCARTHY
Director

/s/ Reginald T. Blades, Jr.
REGINALD T. BLADES, Jr.
Assistant Director

/s/ Sosun Bae
SOSUN BAE
Senior Trial Counsel
Commercial Litigation Branch
Civil Division
Department of Justice
P.O. Box 480
Ben Franklin Station
Washington, DC 20044
Telephone: (202) 305-7568
Fax: (202) 307-0972
Email: sosun.bae@usdoj.gov

OF COUNSEL:
BRIEN STONEBREAKER
Attorney
Office of the Chief Counsel
   for Trade Enforcement & Compliance
U.S. Department of Commerce

Dated: February 7, 2025

Attorneys for Defendant

## <u>TABLE OF CONTENTS</u>

<u>PAGE</u>

STATEMENT PURSUANT TO RULE 56.2 ................................................................. 1

    I.    Administrative Decision Under Review ................................................. 1

    II.    Issues Presented ......................................................................... 2

STATEMENT OF FACTS ................................................................................. 2

SUMMARY OF THE ARGUMENT ....................................................................... 5

ARGUMENT ............................................................................................... 7

    I.    Standard Of Review .................................................................... 7

    II.    Commerce's Application Of AFA Was Lawful And Supported By Substantial Evidence ............................................................................... 8

        A.    Legal Framework .......................................................... 8

        B.    Commerce Reasonably Applied AFA For Gentile's Failure To Disclose Affiliates ........................................................ 10

        C.    Commerce's Selection Of An AFA Rate Accords With The Statute And Its Practice ......................................................... 14

    III.    Commerce Reasonably Terminated Verification Prior To Its Completion .......... 19

    IV.    The Eighth Amendment Does Not Apply To Commerce's Application Of AFA ...................................................................................... 21

CONCLUSION ........................................................................................... 22

i

# TABLE OF AUTHORITIES

**PAGE(S)**

## CASES

*Austin v. United States*,
    509 U.S. 602 (1993) ............................................................................. 21

*Bonney Forge Corp. v. United States*,
    560 F. Supp. 3d 1303 (Ct. Int'l Trade 2022) ....................................... 20

*Chaparral Steel Co. v. United States*,
    901 F.2d 1097 (Fed. Cir. 1990) ...................................................... 7, 21

*Coalition for the Preservation of Am. Brake Drum & Rotor Aftermarket Mfrs. v. United States*,
    44 F. Supp. 2d 229 (Ct. Int'l Trade 1999) .......................................... 20

*Consolidated Edison Co. v. NLRB*,
    305 U.S. 197 (1938) ............................................................................... 7

*Consolo v. Fed. Mar. Comm'n*,
    383 U.S. 607 (1966) ............................................................................... 7

*Essar Steel Ltd. v. United States*,
    678 F.3d 1268 (Fed. Cir. 2012) ...................................................... 8, 22

*F. Ili DeCecco Di Filippo Fara S. Martino S.p.A. v. United States*,
    216 F.3d 1027 (Fed. Cir. 2000) ........................................... 15, 19, 22

*Goldlink Indus. Co. v. United States*,
    431 F. Supp. 2d 1323 (Ct. Int'l Trade 2006) ........................................ 7

*Goodluck India Ltd. v. United States*,
    11 F.4th 1335 (Fed. Cir. 2021) ............................................................ 13

*GPX Intern. Tire Corp. v. United States*,
    893 F. Supp. 2d 1296 (Ct. Int'l Trade 2013) .................................. 7, 21

*Grashoff v. Adams*,
    65 F.4th 910 (7th Cir. 2023) ............................................................... 21

*KYD, Inc. v. United States*,
    607 F. 3d 760 (Fed. Cir. 2010) ...................................................... 7, 21

*KYD, Inc. v. United States*,
    836 F. Supp. 2d 1410 (Ct. Int'l Trade 2012) .................................. 7, 22

*Micron Tech., Inc. v. United States,*
　　117 F.3d 1386 (Fed. Cir. 1997) ........................................................................ 20

*Nan Ya Plastics Corp., Ltd. v. United States,*
　　810 F.3d 1333 (Fed. Cir. 2016) ........................................................................ 15

*Nippon Steel Corp. v. United States,*
　　337 F.3d 1373 (Fed. Cir. 2003) ..................................................................... 9, 14

*Nippon Steel Corp. v. United States,*
　　458 F.3d 1345 (Fed. Cir. 2006) .......................................................................... 8

*Papierfabrik August Koehler SE v. United States,*
　　843 F.3d 1373 (Fed. Cir. 2016) .......................................................................... 9

*POSCO v. United States,*
　　353 F. Supp. 3d 1357 (Ct. Int'l Trade 2018) .................................................... 12

*PSC VSMPO-Avisma Corp. v. United States,*
　　688 F.3d 751 (Fed. Cir. 2012) ............................................................................ 8

*SeAH Steel Corp. v. United States,*
　　659 F. Supp. 3d 1318 (Ct. Int'l Trade 2023) .................................................... 12

*SolarWorld Americas, Inc. v. United States,*
　　229 F. Supp. 3d 1362 (Ct. Int'l Trade 2017) .................................................... 15

*Timken Co. v. United States,*
　　699 F. Supp. 300 (Ct. Int'l Trade 1988) ............................................................. 8

*United States v. Bajakajian,*
　　524 U.S. 321 (1998) .......................................................................................... 21

*United States v. Viloski,*
　　814 F.3d 104 (2nd Cir. 2016) ............................................................................ 21

## STATUTES

19 U.S.C. § 1516a ................................................................................................... 7
19 U.S.C. § 1677 ................................................................................................... 11
19 U.S.C. § 1677e(a)(1) .......................................................................................... 8
19 U.S.C. § 1677e(a)(2)(A)-(D) ......................................................................... 8, 14
19 U.S.C. § 1677e(b) ............................................................................................... 8
19 U.S.C. § 1677e(b)(1)(B) ..................................................................................... 9
19 U.S.C. § 1677e(d) ............................................................................................. 15

19 U.S.C. § 1677e(d)(1)(A) ........................................................................................ 9
19 U.S.C. § 1677e(d)(3) ............................................................................................. 9
19 U.S.C. § 1677m(e) ......................................................................................... 14, 20
19 U.S.C. § 1677m(e)(4) ..................................................................................... 14, 15


## **REGULATIONS**

19 C.F.R. § 351.525(b)(6) ..........................................................................................11


## **ADMINISTRTIVE DETERMINATIONS**

*Certain Pasta from Italy*,
   89 Fed. Reg. 3,382 (Dep't of Commerce January 18, 2024) ................................... 1

*Notice of Countervailing Duty Order and Amended Final Affirmative Countervailing Duty
Determination: Certain Pasta from Italy*,
   61 Fed. Reg. 38,544 (Dep't of Commerce July 24, 1996) ...................................... 2

*Initiation of Antidumping and Countervailing Duty Administrative Reviews*,
   87 Fed. Reg. 54,463 (Dep't of Commerce Sept. 6, 2022) ...................................... 2

*Certain Pasta from Italy*,
   88 Fed. Reg 45,886 (Dep't of Commerce July 18, 2023) ....................................... 4

*Countervailing Duties*,
   63 Fed. Reg. 65,348 (Dep't of Commerce Nov. 25, 1998) ................................... 11

*Certain Pasta from Italy*,
   61 Fed. Reg. 30,288 (Dep't of Commerce June 14, 1996) ................................... 16

*Certain Pasta from Italy,*
   63 Fed. Reg. 43,905 (Dep't of Commerce Aug. 17, 1998) ................................... 16

*Certain Pasta from Italy*,
   66 Fed. Reg. 11,269 (Dep't of Commerce Feb. 23, 2001) ................................... 16

*Certain Pasta from Italy*,
   66 Fed. Reg. 64,214 (Dep't of Commerce Dec. 12, 2001) ................................... 16

*Certain Pasta from Italy*,
   69 Fed. Reg. 70,657, (Dep't of Commerce Dec. 7, 2004) ................................... 16

*Certain Pasta from Italy*,
    73 Fed. Reg. 7,251 (Dep't of Commerce Feb. 7, 2008) ............................................... 16

*Certain Pasta from Italy*,
    74 Fed. Reg. 5,922 (Dep't of Commerce Feb. 3, 2009) ............................................... 16

*Certain Pasta from Italy*,
    74 Fed. Reg. 25,489 (Dep't of Commerce May 28, 2009) ........................................... 16

*Certain Pasta from Italy*,
    74 Fed. Reg. 47,204 (Dep't of Commerce Sept. 15, 2009) ......................................... 16

*Certain Pasta from Italy*,
    77 Fed. Reg. 7,129 (Dep't of Commerce Feb. 10, 2012) ............................................. 16

*Certain Pasta from Italy*,
    77 Fed. Reg. 45,582 (Dep't of Commerce Aug. 1, 2012) ........................................... 17

*Certain Pasta from Italy*,
    77 Fed. Reg. 69,793 (Dep't of Commerce Nov. 21, 2022) .......................................... 17

*Certain Pasta from Italy*,
    78 Fed. Reg. 49,256 (Dep't of Commerce Aug. 13, 2013) .......................................... 17

*Certain Pasta from Italy*,
    79 Fed. Reg. 12,154 (Dep't of Commerce Mar. 14, 2014) .......................................... 17

*Certain Pasta from Italy*,
    81 Fed. Reg. 8,918 (Dep't of Commerce Feb. 23, 2016) ............................................. 17

*Certain Pasta from Italy*,
    82 Fed. Reg. 34,481 (Dep't of Commerce July 25, 2017) ........................................... 17

*Certain Pasta from Italy*,
    82 Fed. Reg. 48,060 (Dep't of Commerce Oct. 17, 2017) ........................................... 17

*Certain Pasta From Italy*,
    83 Fed. Reg. 64,329 (Dep't of Commerce Dec. 14, 2018) .......................................... 17

**IN THE UNITED STATES COURT OF INTERNATIONAL TRADE**

BEFORE:  THE HONORABLE MARK A. BARNETT, CHIEF JUDGE

_____
                                                    )
PASTIFICIO GENTILE S.R.L.,                          )
                                                    )
                         Plaintiff,                 )
                                                    )
            v.                                      )        Court No. 24-00037
                                                    )
UNITED STATES,                                      )
                                                    )
                         Defendant.                 )
_____)

### <u>ORDER</u>

Upon consideration of plaintiff's motion for judgment upon the agency record and defendant's responses thereto, plaintiff's reply, the administrative record, and all other pertinent papers, it is hereby

ORDERED that plaintiff's motion is DENIED; and it is further

ORDERED that the Department of Commerce's determination is sustained; and it is

ORDERED that judgment is entered in favor of the United States.


Dated: _____, 2025            _____
New York, NY                                    Chief Judge

IN THE UNITED STATES COURT OF INTERNATIONAL TRADE

BEFORE:  THE HONORABLE MARK A. BARNETT, CHIEF JUDGE

| | |
|---|---|
| PASTIFICIO GENTILE S.R.L., | ) |
| Plaintiff, | ) |
| v. | ) Court No. 24-00037 |
| UNITED STATES, | ) |
| Defendant. | ) |

## DEFENDANT'S RESPONSE TO PLAINTIFF'S MOTION FOR JUDGMENT UPON THE AGENCY RECORD

Pursuant to Rule 56.2 of the Rules of this Court, defendant, the United States, respectfully submits this response to the motion for judgment upon the agency record filed by plaintiff, Pastificio Gentile S.r.l. ("Gentile"). *See* Gentile Br., ECF No. 20. Gentile challenges certain aspects of the Department of Commerce's final results in an administrative review of the countervailing duty order covering certain pasta from Italy. As we demonstrate below, Commerce's final results are supported by substantial evidence and in accordance with law. Accordingly, we respectfully request that the Court deny Gentile's motion and enter judgment for the United States.

## STATEMENT PURSUANT TO RULE 56.2

I.    Administrative Decision Under Review

The administrative determination under review is *Certain Pasta from Italy*, 89 Fed. Reg. 3,382 (Dep't of Commerce January 18, 2024) (final results) (P.R. 128), and accompanying Issues and Decision Memorandum (IDM) (P.R. 125). The period of review covered is January 1, 2021, to December 31, 2021.

II.    Issues Presented

1.    Whether Commerce's application of an adverse inference in selecting from among the facts otherwise available on the record (AFA) was supported by substantial evidence and in accordance with law.

2.    Whether Commerce's termination of verification was lawful.

3.    Whether Commerce's application of AFA implicates the Eighth Amendment.

## STATEMENT OF FACTS

In 1998, Commerce issued a countervailing duty order covering certain pasta from Italy. *See Notice of Countervailing Duty Order and Amended Final Affirmative Countervailing Duty Determination: Certain Pasta from Italy*, 61 Fed. Reg. 38,544 (Dep't of Commerce July 24, 1996). On September 6, 2022, Commerce initiated an administrative review of the order. *See Initiation of Antidumping and Countervailing Duty Administrative Reviews*, 87 Fed. Reg. 54,463, 54473 (Dep't of Commerce Sept. 6, 2022) (P.R. 10).

Commerce issued an initial questionnaire, directing respondents to identify affiliated companies. Initial Questionnaire at III-2 – III-3 (P.R. 20). In the questionnaire, Commerce explained that "{i}dentification of the companies that you must include in your response is necessary *early in this administrative review*." *Id.* (emphasis added). On December 20, 2022, Gentile submitted its response identifying affiliated parties. *See* Response to Affiliated Parties Portion of Section III of the Department's Initial Questionnaire (Affiliation Response) (P.R. 32; C.R. 5). Gentile identified only two affiliated companies—Forno Gentile S.r.l. and Agricola Gentile S.r.l.—and stated that neither entity was involved in pasta production. *Id*. at 9-10. Based on Gentile's representation, Commerce preliminarily determined a subsidy rate of 1.79 percent

for Gentile.  *See Certain Pasta from Italy*, 88 Fed. Reg 45,886 (Dep't of Commerce July 18, 2023) (preliminary results) (P.R. 102).

After issuance of the preliminary results, Commerce scheduled an on-site verification of Gentile's questionnaire responses.  *See* Gentile Verification Agenda (September 29, 2023) (P.R. 106).  During verification, Commerce identified multiple discrepancies between the information provided in Gentile's affiliation response and that revealed at verification.  *See* Gentile Verification Report (Nov. 2, 2023) (P.R. 113, C.R. 50).  In particular, Commerce identified multiple entities that Gentile should have—but did not—report in its affiliation response.  *Id.* Due to these discrepancies, Commerce determined not to verify the remainder of Gentile's responses and concluded verification.  *Id.*

In its case brief, Gentile argued that Commerce had identified only minor flaws in Gentile's reporting of companies, and claimed that those companies would not have been required to submit complete questionnaire responses even if they had been disclosed.  Gentile Case Br. at 7 (C.R. 52).  Gentile also claimed that Commerce should not have terminated verification because Commerce was aware that the error was minimal and had no impact on other information.  *Id*. at 8.  Finally, Gentile argued that Commerce must consider the Eighth Amendment in assessing an AFA rate.  *Id.* at 8-13.

Commerce issued its final results on January 18, 2024.  In the final results, Commerce determined to apply facts available with an adverse inference to Gentile, explaining that, by not reporting the affiliated companies, Gentile had withheld requested information, failed to provide timely responses in the required format, and significantly impeded the proceeding, and that it had failed to cooperate to the best of its ability.  IDM at 6-7.  Commerce observed that Gentile's omission prevented Commerce from completing a thorough review of Gentile and called into

question the accuracy and completeness of the remainder of Gentile's questionnaire responses. *Id.* at 13, 17. Commerce also rejected Gentile's arguments that Commerce should not have terminated verification and that its assessment of an AFA rate must consider the Eighth Amendment. *Id.* at 14.

As AFA, Commerce concluded that Gentile used and benefited from each program under review during the period of review. *See* IDM at 16. Commerce relied on its established hierarchy for selecting such rates in administrative reviews, applying the highest calculated program-specific rates for identical or similar programs in prior segments of the same proceeding or, if necessary, other countervailing duty proceedings involving the same country. *Id.* at 7-10. For income tax programs, Commerce determined that Gentile paid no income tax during the POR and applied the standard corporate tax rate of 24 percent as the AFA rate. *Id.* at 10. For other programs, Commerce applied the highest non-*de minimis* rate from applicable proceedings, excluding programs previously found to be terminated or non-countervailable. *Id.* Commerce applied the rates from 51 programs, plus income tax programs, to derive a total AFA rate of 88.67 percent. AFA Memorandum (P.R. 126) (AFA Memo).

## SUMMARY OF THE ARGUMENT

Commerce's final results were supported by substantial evidence and in accordance with law. First, Commerce reasonably applied AFA. Gentile's argument that its error was minimal and harmless is unsupported, and the Court should not substitute its—or Gentile's—judgment for Commerce's. Gentile's claim that it *did* disclose the entities in its later questionnaire responses does not absolve it of its dereliction of duty in failing to report the entities in its *affiliation response*. Gentile's failure to cooperate in submitting information justifies Commerce's application of AFA because Gentile's failure to timely disclose the affiliated companies

prevented Commerce from completing a thorough review with regard to those affiliates and called into question the accuracy and completeness of Gentile's questionnaire responses.

Gentile argues that Commerce should depart from its methodology—which is grounded in statute—for selecting an AFA rate and instead apply a rate based on margins calculated in prior segments of the proceeding. But Gentile does not establish that Commerce should depart from its practice of applying AFA rates based on the highest calculated program-specific rates for identical or similar programs in prior segments of the same proceeding or, if necessary, other countervailing duty proceedings involving the same country. Moreover, Commerce's regulations make clear that it must look at the facts presented in *each case* in determining whether cross-ownership exists; accordingly, historical margins calculated for cooperating parties have little, if any, relevance to Commerce's calculation of an AFA rate in this case. Commerce's methodology ensures the rate is sufficiently adverse to deter noncooperation and ensure that a party does not obtain a more favorable result by failing to cooperate than if it had cooperated fully.

Second, Commerce acted reasonably in deciding to terminate verification upon discovering the multiple discrepancies in Gentile's affiliation response. Verification is not intended as an avenue for the introduction of new factual information. By failing to disclose multiple affiliates, Gentile impeded Commerce's ability to evaluate their relevance, depriving Commerce of the opportunity to thoroughly analyze whether Gentile should be required to provide more information about the affiliates or whether the affiliates should have to submit full questionnaire responses. Moreover, Gentile's omission undermined the credibility and reliability of all other submitted information, rendering Commerce's decision not to complete verification reasonable.

Finally, the Eighth Amendment has no bearing on Commerce's application of AFA. The Eighth Amendment prohibits excessive fines but applies only to punitive actions, not remedial measures such as AFA. This Court and the Court of Appeals for the Federal Circuit have held that Commerce's use of AFA is remedial, not punitive, because it incentivizes compliance and ensures accurate and complete disclosures. *See, e.g.*, *Chaparral Steel Co. v. United States*, 901 F.2d 1097, 1103-04 (Fed. Cir. 1990); *KYD, Inc. v. United States*, 607 F. 3d 760, 767-68 (Fed. Cir. 2010); *GPX Intern. Tire Corp. v. United States*, 893 F. Supp. 2d 1296, 1310 (Ct. Int'l Trade 2013). And, as this Court has already held, application of AFA *does not* implicate the Eighth Amendment. *KYD, Inc. v. United States*, 836 F. Supp. 2d 1410, 1415 (Ct. Int'l Trade 2012).

## **ARGUMENT**

### I.    Standard Of Review

This Court holds lawful Commerce's determination unless it is "unsupported by substantial evidence on the record, or otherwise not in accordance with law." 19 U.S.C. § 1516a. "Substantial evidence" consists of "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938). Substantial evidence may be "less than the weight of the evidence," and the possibility of drawing two inconsistent conclusions from evidence upon the record does not render Commerce's findings unsupported by substantial evidence. *See Consolo v. Fed. Mar. Comm'n*, 383 U.S. 607, 620 (1966).

Moreover, "the court may not substitute its judgment for that of the {agency} when the choice is between two fairly conflicting views, even though the court would justifiably have made a different choice had the matter been before it de novo." *Goldlink Indus. Co. v. United States*, 431 F. Supp. 2d 1323, 1326 (Ct. Int'l Trade 2006) (citation and quotation marks omitted);

*see also Timken Co. v. United States*, 699 F. Supp. 300, 306 (Ct. Int'l Trade 1988) (explaining that it is "not within the Court's domain either to weigh the adequate quality or quantity of the evidence for sufficiency or to reject a finding on grounds of a differing interpretation of the record"). Hence, a party challenging Commerce's determination under the substantial evidence standard "has chosen a course with a high barrier to reversal." *Nippon Steel Corp. v. United States*, 458 F.3d 1345, 1352 (Fed. Cir. 2006).

Finally, "{t}he role of judicial review is limited to determining whether the record is adequate to support the administrative action." *PSC VSMPO-Avisma Corp. v. United States*, 688 F.3d 751, 761 (Fed. Cir. 2012); *see also Essar Steel Ltd. v. United States*, 678 F.3d 1268, 1278 (Fed. Cir. 2012) (reversing the Court's order instructing Commerce to consider extra-record information because "the trial court's order usurps agency power, undermines Commerce's ability to administer the statute entrusted to it, contradicts important principles of finality, and discourages compliance.").

II.    Commerce's Application Of AFA Was Lawful And Supported By Substantial Evidence

    A.    Legal Framework

Commerce applies facts otherwise available to fill gaps in the record if "necessary information is not available on the record," 19 U.S.C. § 1677e(a)(1), or if an interested party: (a) withholds information requested by Commerce; (b) fails to provide the information in the form or in the manner requested; (c) significantly impedes the proceedings; or (d) provides information that cannot be verified. 19 U.S.C. § 1677e(a)(2)(A)-(D). During a countervailing duty proceeding, Commerce may select a rate with which to countervail a subsidy program by applying an adverse inference when it "finds that an interested party has failed to cooperate by not acting to the best of its ability to comply with {Commerce's} request for information." 19

U.S.C. § 1677e(b).  An interested party fails to act to the best of its ability when it does not exert "maximum effort to provide Commerce with full and complete answers to all inquiries in an investigation." *Nippon Steel Corp. v. United States*, 337 F.3d 1373, 1382 (Fed. Cir. 2003). "While the standard does not require perfection and recognizes that mistakes sometimes occur, it does not condone inattentiveness, carelessness, or inadequate record keeping." *Id*.  To avoid the application of facts available with an adverse inference, respondents must "conduct prompt, careful, and comprehensive investigations of all relevant records that refer or relate to the imports in question." *Papierfabrik August Koehler SE v. United States,* 843 F.3d 1373, 1379 (Fed. Cir. 2016) (citing *Nippon Steel*, 337 F.3d at 1382).

When applying an adverse inference, Commerce is not required to determine or to make any adjustments to a countervailable subsidy rate based on any assumptions about information an interested party would have provided if the interested party had complied with the request for information.  *See* 19 U.S.C. § 1677e(b)(1)(B).  In calculating an AFA rate, Commerce will rely on a rate for the same or a similar program in a prior segment of the proceeding, a rate for the same or a similar program in a countervailing duty proceeding involving the same country, or, if there is no same or similar program, a rate for a subsidy program from a proceeding that the administering authority considers reasonable to use, including the highest of such rates.  *Id.* at § 1677e(d)(1)(A).  When selecting an AFA rate, Commerce is not required to estimate what the countervailable subsidy rate would have been if the interested party had cooperated nor to demonstrate that the countervailable subsidy rate reflects an "alleged commercial reality" of the interested party.  *Id.* at § 1677e(d)(3).

B.    <u>Commerce Reasonably Applied AFA For Gentile's Failure To Disclose Affiliates</u>

Commerce acted reasonably and lawfully in applying AFA to Gentile for its failure to timely identify required affiliates.  Gentile lodges multiple arguments against Commerce's decision, none of which have merit.

Gentile first contends that it actually did disclose the affiliated companies—just not in its affiliation response.[1]  Gentile Br. at 12.  Although Gentile acknowledges that this does not excuse its failure to timely identify the affiliates in its initial response, it nonetheless contends that Commerce should have been aware of those entities through Gentile's "reporting" of them in certain exhibits to its initial and supplemental questionnaire responses.[2]  *Id.* at 12-13.  But Gentile's assertion only highlights that it knew—or should have known—about these affiliates and yet chose not to disclose them in response to Commerce's direct request.  *See* Initial Questionnaire at III-2 – III-4.  Indeed, Gentile did not attempt to remedy its earlier omission by expressly identifying those affiliates in its initial or supplemental questionnaire responses.  As Gentile concedes, it was required to report the affiliates in its *affiliation response*, well ahead of the submission of its initial questionnaire response.  IDM at 15.  As such, Gentile both disregarded Commerce's explicit instruction and did not timely submit the information.  Moreover, as Commerce explained, Gentile did not even identify the affiliates in its narrative response or contemporaneously cite the exhibit as showing those affiliates; rather, in its case brief, Gentile pointed to only one exhibit—numbering over 600 pages in length—mentioning the

---

[1]  Gentile does not specifically assert that one affiliate—███████████ was listed in its questionnaire response exhibits.

[2]  Although Gentile now claims that Exhibit CVD-10 to its initial questionnaire response identifies an affiliate, Commerce explained that Gentile did not—in its administrative case brief—cite to where in the initial questionnaire response Gentile had listed that information.  IDM at 15.

affiliates. *Id.* at 15-16. Gentile cites no legal authority for the concept that Commerce is required to examine every single piece of record evidence for information unrelated to the purpose for which the evidence was submitted, especially when a respondent has clearly failed to disclose relevant information in the time and manner requested. *Id.* at 16.

Gentile also argues that its error was minor enough such that Commerce's application of AFA was an "overreach" and claims that we cannot deny the "minimal nature" of the affiliates and now declare them significant. Gentile Br. at 9-10, 16. These arguments fundamentally misunderstand the significance of a respondent's affiliation response, as well as the basis for Commerce's application of AFA.

Gentile does not contest that the unreported entities constitute affiliates pursuant to the statute. The statute, 19 U.S.C. § 1677, requires companies to disclose affiliated entities and provides clear guidance on what constitutes "affiliated persons" or what shall be considered "affiliated." Complete affiliation information, timely submitted, allows Commerce to determine whether affiliates are cross-owned with the respondent and whether to request further information regarding affiliates that may meet the requirements for the attribution of subsidies. IDM at 6 (citing 19 C.F.R. § 351.525(b)(6)). Pursuant to regulation, Commerce must look at the facts presented in each case to determine whether cross-ownership exists. *See Countervailing Duties*, 63 Fed. Reg. 65,348, 65401 (Dep't of Commerce Nov. 25, 1998). As Commerce explained in its final results, determining whether affiliates are cross-owned or meet the attribution criteria is time-consuming, as well as a "critical step for Commerce to determine the full universe of entities that must provide information on their subsidization." IDM at 13. Hence, Commerce requires respondents to submit affiliation information two weeks after the

issuance of the initial questionnaire, well before the time for submission of the other responsive information. *Id.*

Commerce's initial questionnaire specifically instructed Gentile to identify all affiliates, describe in detail the nature of the relationships between Gentile and the affiliates, and provide complete responses for "cross-owned" affiliated companies that can use or direct the individual assets of another company in essentially the same ways it can use its own assets, or are cross-owned with Gentile by a third party. Replacement Questionnaire at III-2 – III-3 (P.R. 27).

Despite these requests, Gentile failed to report all affiliated companies that were active during the period of review. Gentile Verification Report at 3-4. And it does not appear that Gentile tried to affirmatively submit information on those affiliates during verification. Rather, Commerce only became aware of these companies at verification when, in the course of Commerce's review of Gentile's accounting system, a list was queried that included the previously unreported companies. *Id.* at 3, IDM at 7. Given the crucial nature of affiliation responses, Commerce reasonably found that Gentile's omission was not simply a minor flaw, but rather a significant omission precluding Commerce from completing a thorough review of Gentile. IDM at 13. And by selectively deciding which entities to include in its affiliation response, rather than reporting all affiliates as directed, Gentile improperly substituted its own judgment for that of Commerce's.[3] *See SeAH Steel Corp. v. United States*, 659 F. Supp. 3d 1318, 1326 (Ct. Int'l Trade 2023) (citing *POSCO v. United States*, 353 F. Supp. 3d 1357, 1375 (Ct. Int'l Trade 2018).

---

[3] Gentile does not appear to have claimed that its omission was inadvertent (nor can it do so now at this late stage).

Gentile has provided no justification for not timely reporting *all* affiliates, regardless of Gentile's opinion as to their relevance.  Further, Gentile's inclusion of Forno Gentile S.r.l. and Agricola Gentile S.r.l. in its affiliation response, even though neither entity was involved in pasta production, is particularly bizarre when considering that Gentile did not include ██████████, ████████████████████████████████████, given at least two of those entities ███ ████████████████████████.  Gentile Affiliation Response at 3-4, Verification Report at 3. ██████████████████████████████████████████ ██████████████████████████████████████████ ███████████████████████████████ *Id.*

Gentile is also mistaken as to the relevance of the purportedly "minimal nature" of the omitted information.  First, we do not claim outright that the entities themselves are "significant."  Gentile Br. at 16.  The significance of Gentile's failure to report lies in the importance of the affiliation response and the deprivation of Commerce's ability to timely and thoroughly review those affiliates and to determine whether further information was required. Contrary to Gentile's unsupported assertion that Commerce was "well-aware" of the supposedly minimal nature of the error, Gentile Br. at 13, Commerce discovered the unreported affiliates only during verification; it had no previous knowledge of the companies and thereby no basis to determine the potential impact of those affiliates.  IDM at 14.  Because Gentile did not report the affiliates,[4] Commerce could not make an adequate determination as to whether the affiliates met the attribution criteria.  *Id.* at 7.

---

[4] If Gentile were to argue that Commerce should have simply accepted the identification of the affiliates at verification and then conducted a thorough review, that argument would be entirely unsupported.  Of course, verification is not an opportunity to submit new factual information or non-minor corrections.  *See Goodluck India Ltd. v. United States*, 11 F.4th 1335, 1343 (Fed. Cir. 2021).

Given all this, Commerce properly determined that Gentile withheld requested information, failed to timely provide information in the form and manner requested, and significantly impeded the proceeding. IDM at 5 (citing 19 U.S.C. § 1677e(a)(2)(A)-(D). Commerce also reasonably found that Gentile failed to cooperate by not acting to the best of its ability. *Id.* at 7. Indeed, Gentile does not assert that it cooperated to the best of its ability or did the maximum that it was able to do.[5] *See Nippon Steel*, 337 F.3d at 1382-83.

Finally, application of total AFA was justified, given the significant nature of Gentile's omission and Commerce's finding that Gentile's decision not to report all affiliates called into question whether all subsidies were reported, as well as the accuracy and completeness of all of Gentile's questionnaire responses. IDM at 16-17. Gentile asserts that, pursuant to 19 U.S.C. § 1677m(e), Commerce was required to use information on the record to calculate a rate. Gentile Br. at 19. In doing so, Gentile claims that it submitted the relevant information by the deadline, and that the information could be verified. *Id.* As established above, this representation is inaccurate. Moreover, as just discussed, Gentile did not demonstrate that it acted to the best of its ability. *See* 19 U.S.C. § 1677m(e)(4).

C.    Commerce's Selection Of An AFA Rate Accords With The Statute And Its Practice

As explained above, consistent with the statute, Commerce's AFA hierarchy for administrative reviews starts with the application of the highest non-*de minimis* rate calculated for the identical program in any segment of the same proceeding. IDM at 8. If there is no

---

[5] If Gentile were to claim that it did cooperate to the best of its ability, that assertion would be unsupported. Failing to report affiliates in an affiliation response, despite Commerce's explicit instruction to do so, constitutes a failure to act to the best of one's ability. Moreover, the AFA standard does not condone inattentiveness, carelessness, or inadequate record keeping. *Nippon Steel*, 337 F.3d at 1382.

identical program match within the same proceeding, or if the rate is *de minimis*, Commerce applies the highest non-*de minimis* rate calculated for a similar program within any segment of the same proceeding. *Id.* If there is no non-*de minimis* rate calculated for a similar program within the same proceeding, then Commerce applies the highest non-*de minimis* rate calculated for an identical or similar program in another countervailing duty proceeding involving the same country. *Id.* Finally, if there is no non-*de minimis* rate under that scenario, Commerce applies the highest calculated rate for any program from the same country that the industry subject to the review could have used. *Id.*; *see also* 19 U.S.C. § 1677e(d); *SolarWorld Americas, Inc. v. United States*, 229 F. Supp. 3d 1362, 1366-67 (Ct. Int'l Trade 2017) (sustaining Commerce's AFA hierarchy).

Section 1677e(d) anticipates that Commerce will apply its hierarchical methodology, and that Commerce may apply the highest rate derived from this hierarchy to a respondent. It is also axiomatic that, when applying AFA, Commerce selects a rate sufficiently adverse to effectuate the statutory purpose of section 1677e, which is to encourage respondents to provide complete and accurate information to Commerce in a timely manner. This ensures "that the party does not obtain a more favorable result by failing to cooperate than if it had cooperated fully." *Nan Ya Plastics Corp., Ltd. v. United States*, 810 F.3d 1333, 1338 (Fed. Cir. 2016); *see also F. Ili DeCecco Di Filippo Fara S. Martino S.p.A. v. United States*, 216 F.3d 1027, 1032 (Fed. Cir. 2000) (finding that "{t}he purpose of the adverse facts statute is 'to provide respondents with an incentive to cooperate' with Commerce's investigation, not to impose punitive damages.")).

The rate applied to Gentile is consistent with section 1677e(d) and Commerce's hierarchy methodology. Gentile establishes no cause to depart from the statutory expectation or Commerce's practice. In adhering to its well-established hierarchy, Commerce first selected

rates for identical or similar programs used by companies previously reviewed under the order. IDM at 16-17.  Specifically, Commerce used rates calculated from the following segments of the proceeding to derive Gentile's AFA rate:

- *Certain Pasta from Italy*, 61 Fed. Reg. 30,288 (Dep't of Commerce June 14, 1996) (investigation)

- *Certain Pasta from Italy,* 63 Fed. Reg. 43,905 (Dep't of Commerce Aug. 17, 1998) (1995/1996 review)

- *Certain Pasta from Italy*, 66 Fed. Reg. 11,269 (Dep't of Commerce Feb. 23, 2001) (1998 review)

- *Certain Pasta from Italy*, 66 Fed. Reg. 64,214 (Dep't of Commerce Dec. 12, 2001) (1999 review)

- *Certain Pasta from Italy*, 69 Fed. Reg. 70,657 (Dep't of Commerce Dec. 7, 2004) (2002 review)

- *Certain Pasta from Italy*, 73 Fed. Reg. 7,251 (Dep't of Commerce Feb. 7, 2008) (2005 review).

- *Certain Pasta from Italy*, 74 Fed. Reg. 5,922 (Dep't of Commerce Feb. 3, 2009) (2006 review)

- *Certain Pasta from Italy*, 74 Fed. Reg. 25,489 (Dep't of Commerce May 28, 2009) (2007 review preliminary results), unchanged by final results in *Certain Pasta from Italy*, 74 Fed. Reg. 47,204 (Dep't of Commerce Sept. 15, 2009)

- *Certain Pasta from Italy*, 77 Fed. Reg. 7,129 (Dep't of Commerce Feb. 10, 2012) (2009 review)

- *Certain Pasta from Italy*, 77 Fed. Reg. 45,582 (Dep't of Commerce Aug. 1, 2012)
  (2010 review preliminary results), unchanged by final results in *Certain Pasta from Italy*, 77 Fed. Reg. 69,793 (Dep't of Commerce Nov. 21, 2022) (2010 review)

- *Certain Pasta from Italy*, 78 Fed. Reg. 49,256 (Dep't of Commerce Aug. 13, 2013)
  (2011 review preliminary results), and *Certain Pasta from Italy*, 79 Fed. Reg. 12,154 (Dep't of Commerce Mar. 14, 2014) (final results).

- *Certain Pasta from Italy*, 81 Fed. Reg. 8,918 (Dep't of Commerce Feb. 23, 2016)
  (2013 review)

- *Certain Pasta from Italy*, 82 Fed. Reg. 34,481 (Dep't of Commerce July 25, 2017)
  (2016 review preliminary results), unchanged by final results in *Certain Pasta from Italy*, 82 Fed. Reg. 48,060 (Dep't of Commerce Oct. 17, 2017)

- *Certain Pasta From Italy*, 83 Fed. Reg. 64,329 (Dep't of Commerce Dec. 14, 2018)
  (2016 review)

AFA Memo at 1-2.

Commerce selected the highest calculated non-*de minimis* rates, when appropriate, for the same programs from these segments of the proceeding.  IDM at 10; *see also* AFA memo at 4-6. For instances where no non-*de minimis* rate for an identical program existed, Commerce selected the highest rate calculated for a similar program in a segment of the proceeding.  *Id.*  Commerce did not include any program that was previously found to be terminated or not countervailable. *Id.*

In total, Commerce used the rates from 51 programs to derive the AFA rate.  IDM at 10, AFA Memo at 4-6.  Commerce also found that Gentile did not pay income taxes during the period of review.  IDM at 10.  Because the standard income tax rate for corporations in Italy

during the period of review was 24 percent, Commerce selected 24 percent as the highest possible benefit for income tax programs. *Id.; see also* Gentile Section III Questionnaire Response, dated February 7, 2023 at Exh. CVD-3 (P.R. 61; C.R. 6). The AFA rate determined for Gentile is reflective of the actual subsidies received by pasta producers in the proceeding, aligns with the statutory purpose, and is supported by substantial evidence. IDM at 17. It is not, as Gentile claims, unjustifiably high or untethered to reality.

Gentile further argues that the "calculated margins in this order for the past 12 years have been consistently low" and that, thus, Commerce should assign it an AFA rate of no more than 2.49 percent because that was the highest calculated rate in a segment of the proceeding. Gentile Br. at 21. Gentile believes that Commerce should account for these historical rates when determining margins and that the AFA rate should be no higher than the rate calculated in 2010.[6] *Id.* at 21-22. But Gentile's reliance on historical margins under the order is misplaced. Commerce did not find cause to apply AFA during previous reviews. IDM at 17. Accordingly, those calculated rates provide no basis for the assignment of a total AFA rate. Gentile failed to provide key information (*i.e,* a complete reporting of its affiliates), and Commerce properly found that Gentile had failed to cooperate by not acting to the best of its ability. Applying Gentile's proposed approach would undermine the purpose of section 1677e, which is to incentivize compliance and ensure accurate disclosures, and would deviate from Commerce's established AFA methodology and the expectations set forth in the statute. Gentile provides no good reason, and cites no authority, that would justify the Court requiring Commerce to depart from its established AFA methodology.

---

[6] Gentile lists rates starting from only 2010, even though the order was issued in 1998 and there were rates higher than 2.49 percent prior to 2010.

Finally, "in the case of an uncooperative respondent, Commerce is in the best position, based on its expert knowledge of the market and the individual respondent, to select adverse facts that will create the proper deterrent to non-cooperation with its investigations and assure a reasonable margin." *De Cecco*, 216 F.3d at 1032. Due to Gentile's actions calling into question the accuracy and completeness of its submitted information, Commerce was unable to determine whether all subsidy programs attributable to Gentile during the period of review were accurately reported. IDM at 17. Accordingly, both its decision to apply AFA and its calculation of the AFA rate were lawful, reasonable, and supported by the record.

III.    <u>Commerce Reasonably Terminated Verification Prior To Its Completion</u>

For the reasons explained above—particularly Commerce's determination that Gentile's omissions caused it to doubt the completeness and accuracy of its responses—Commerce reasonably determined, within its discretion, to end verification without attempting to verify the remainder of the information submitted by Gentile. In addition, Commerce explicitly stated in its verification agenda to Gentile that "verification is not intended to be an opportunity for the submission of new factual information." Verification Agenda at 2. And Gentile does not, and cannot, contest that the identification of previously unreported affiliates at verification constitutes new factual information. Determining whether an affiliate is cross-owned or meets the criteria for attribution is a time-intensive process, as well as a crucial step in enabling Commerce to identify all entities required to provide subsidization information. IDM at 13. Due to Gentile's decision not to report the affiliates, Commerce was left uninformed, becoming aware of additional affiliates only during verification due to its queries. *See* Gentile Verification Report at 3-4.

Gentile argues that terminating verification early prevented Commerce from properly verifying information, as required by 19 U.S.C. § 1677m(e).  First, as explained above, Gentile does not meet all the criteria under section 1677m; at the very least, it did not provide the information by the deadline or demonstrate it acted to the best of its ability.  Moreover, and again, Commerce found that Gentile's actions called into question whether all subsidies were reported, as well as the accuracy and completeness of its submissions.  IDM at 1617.

In arguing that Commerce was "well-aware" of the minimal nature of the error and that it had a "lack of impact" on all other information presented, Gentile is essentially claiming that the Court should require Commerce to accept new factual information during verification *and* assume this new factual information would have no impact.  This contention is neither reasonable nor supportable.  Commerce reasonably decided, within its discretion, to terminate the verification process and not to rely on Gentile's reported information.  *See, e.g., Micron Tech., Inc. v. United States*, 117 F.3d 1386, 1396 (Fed. Cir. 1997) (Verification "rests upon an administrative determination—an exercise of judgment in an area which Congress has entrusted to the agency—of course it must not be set aside because {we} might have made a different determination were {we} empowered to do so.") (internal quotation marks omitted); *Coalition for the Preservation of Am. Brake Drum & Rotor Aftermarket Mfrs. v. United States*, 44 F. Supp. 2d 229, 237 (Ct. Int'l Trade 1999) (Commerce has "broad discretion to fashion its own rules of administrative procedure, including the authority to establish and enforce time limits concerning the submission of written information and data.") (citation omitted); *Bonney Forge Corp. v. United States*, 560 F. Supp. 3d 1303, 1310 (Ct. Int'l Trade 2022) (the Court reviews Commerce's verification procedures for abuse of discretion).

IV.    <u>The Eighth Amendment Does Not Apply To Commerce's Application Of AFA</u>

Gentile argues that Commerce was required to consider the implications of the Eighth Amendment—in particular the Excessive Fines Clause—in calculating an AFA rate.  Gentile Br. at 23.  This argument has no reasonable basis and has been previously rejected by the Court.

The Eighth Amendment states that "excessive fines" shall not be imposed.  U.S. Const. amend. VIII.  The purpose is to "limit{ } the government's power to extract payments, whether in cash or in kind, 'as *punishment* for some offense.'"  *Austin v. United States,* 509 U.S. 602, 609-610 (1993) (emphasis in original).  Thus, the threshold question to determine whether the Excessive Fines Clause applies is whether the challenged action is "punitive or purely remedial{.}"  *Grashoff v. Adams*, 65 F.4th 910, 916 (7th Cir. 2023); *see also United States v. Viloski*, 814 F.3d 104, 109 (2nd Cir. 2016) (explaining that the clause applies to only "forfeitures that may be characterized, at least in part, as 'punitive'").  If the sanction is punitive, the second question is whether the punishment is "grossly disproportional to the gravity of the offense." *Grashoff*, 65 F.4th at 917 (quoting *United States v. Bajakajian*, 524 U.S. 321, 334 (1998)) (cleaned up).

This Court and the Federal Circuit have consistently upheld trade remedy laws as remedial and not punitive in nature.  *See, e.g.*, *Chaparral*, 901 F.2d at 1103-04; *KYD*, 607 F. 3d at 767-68; *GPX*, 893 F. Supp. 2d at 1310.  As the Federal Circuit has explained, "an AFA dumping margin determined in accordance with the statutory requirements is not a punitive measure, and the limitations applicable to punitive damages assessments therefore have no pertinence to duties imposed based on lawfully derived margins such as the margin at issue in this case."  *KYD*, 607 F.3d at 767-768.  In applying AFA, Commerce seeks to appropriately incentivize respondents to cooperate (*i.e.*, to provide Commerce with complete and accurate information in a timely

21

manner).  *See Essar Steel*, 678 F. 3d at 1276 (explaining that "{t}he purpose of the adverse facts statute is to 'provide respondents with an incentive to cooperate' with Commerce's investigation, not to impose punitive damages." (quoting *De Cecco*, 216 F.3d at 1032)).   Moreover, this Court has explicitly held that the Eighth Amendment does not apply to the calculation of an AFA rate, explaining that an Eighth Amendment argument is foreclosed because a "statutorily proper AFA rate is remedial rather than punitive, and a 'punitive' rate is statutorily improper."  *KYD*, 836 F. Supp. 2d at 1415 (cleaned up).  Commerce did not violate the statute in applying its AFA hierarchy methodology to Gentile; accordingly, this Court should not consider—as a separate matter—the Eighth Amendment.

Finally, even if the Court were to review Commerce's actions under the Eighth Amendment, the application of AFA in this case is proportional to Gentile's failure to cooperate to the best of its ability.  Gentile failed to provide crucial information explicitly requested by Commerce.  Commerce explained that Gentile's omissions called into question the accuracy and completeness of Gentiles's entire submission.  IDM at 16-17.  Accordingly, Commerce reasonably decided to apply AFA, and calculated a rate based on its well-established methodology, which accords with the directives of section 1677e.  Gentile cannot establish that the rate calculated was disproportionate to its behavior, or that it was punitive.

<u>**CONCLUSION**</u>

For these reasons, we respectfully request the Court to deny Gentile's motion for judgment upon the agency record and to enter judgment for the United States.

Respectfully submitted,

BRETT A. SHUMATE
Acting Assistant Attorney General

22

PATRICIA M. McCARTHY
Director

/s/ Reginald T. Blades, Jr.
REGINALD T. BLADES, Jr.
Assistant Director

OF COUNSEL:                                          /s/ Sosun Bae
BRIEN STONEBREAKER                                   SOSUN BAE
Attorney                                             Senior Trial Counsel
Office of the Chief Counsel                          Commercial Litigation Branch
   for Trade Enforcement & Compliance                Civil Division
U.S. Department of Commerce                          Department of Justice
                                                     P.O. Box 480
                                                     Ben Franklin Station
                                                     Washington, DC 20044
                                                     Telephone: (202) 305-7568
                                                     Fax: (202) 307-0972
                                                     Email: sosun.bae@usdoj.gov

Dated: February 7, 2025                              Attorneys for Defendant

## <u>**CERTIFICATION OF COMPLIANCE**</u>

Pursuant to this Court's January 10, 2025 order, defendant's counsel certifies that this brief complies with the Court's type-volume limitations rules.  According to the word count calculated by the Microsoft Word processing system used to prepare this brief, I certify that this brief contains 6,008 words, excluding those exempted portions of this brief.

<u>/s/ Sosun Bae</u>

February 7, 2025