UNITED STATES COURT OF INTERNATIONAL TRADE

BEFORE: THE HONORABLE MARK A. BARNETT, CHIEF JUDGE

| | |
|---|---|
| Pastificio Gentile S.r.l., <br><br> Plaintiffs, <br><br> v. <br><br> United States, <br><br> Defendant. | Court No. 24-00037 |

**Reply of Pastificio Gentile S.r.l.
to Response of Defendant United States**

David J. Craven, Esq.
CRAVEN TRADE LAW LLC
3744 N Ashland Avenue
Chicago, Illinois 60613
Tel. 773-709-8506
David.craven@tradelaw.com
  Counsel for Plaintiffs

Dated: April 21, 2025

## Table of Contents

I. INTRODUCTION ...................................................................................................1

II. ARGUMENT ......................................................................................................... 3

    A.    The Department's Continued Support for the Application of Total Adverse Inferences is not Appropriate .........................................3

    B.    The Department's Selected Rate was not Reasonable ......................... 4

    C.    The Department Should Not Have Terminated the Verification ..........5

    D.    The Defendant Misconstrues Plaintiff's 8th Amendment Argument................................................................................................6

        i.    There Can be no Dispute that AD/CVD Duties Imposed using AFA are More than Remedial ...........................................7

        ii.    Duties Imposed Under AFA Must be Reasonably Related to the Conduct to be Deterred .......................................................9

III. CONCLUSION................................................................................................10

TABLE OF AUTHORITIES

**Cases:**

*Austin v. United States* 509 *U.S.* 602 (1993) ............................................................. 8

*Diamond Sawblades Manufacturers' Coalition v. United States*, 986 F.3d 1351 (Fed. Cir. 2021) ......................................................................................... 5

*F.Lli De Cecco Di Filippo Fara S. Martino S.P.A. v. United States*, 216 F.3d 1027 (Fed. Cir. 2000) ................................................................................. 5, 7, 8

*NTN Bearing Corp. v. United States*, 74 F.3d 1204 (Fed. Cir. 1995) ....................... 5

*Rhone Poulenc, Inc. v. United States*, 899 F.2d 1185 (Fed. Cir. 1990) ................... 5

*United States v. Bajakajian,* 524 U.S. 321 (1998) ................................................. 8, 9

**Statutes, Laws and Rules:**

Rule 56.2 of the Rules of the United States Court of International Trade ............... 1

U.S. Constitution, Amendment VIII ................................................................. 5 - 9

UNITED STATES COURT OF INTERNATIONAL TRADE

BEFORE: THE HONORABLE MARK A. BARNETT, CHIEF JUDGE

| | |
|---|---|
| Pastificio Gentile S.r.l., <br><br> Plaintiffs, <br><br> v. <br><br> United States, <br><br> Defendant. | Court No. 24-00037 |

**Reply of Pastificio Gentile S.r.l.,**

This reply is submitted to the February 7, 2025 response of the Defendant United States to Plaintiffs' Motion for Judgment pursuant to Rule 56.2 of the Rules of the United States Court of International Trade.

I. **INTRODUCTION**

The Defendant's response ignores certain key facts in this review and continues to support a rate which is disproportionately high and unrelated to an accurate calculation. The Department also misapprehends one of plaintiff's key arguments, and then does not reply to the actual argument.

A. Summary of Argument

- The Department's application of total adverse inferences to plaintiff is not supported by the facts of record. The omission was minor as the

unreported entities were small and would not have been required to be reported by the Department. The underlying claim could have been verified based on the facts of record.

- The selected rate was not reasonable. The selected rate has no relationship with reality and is not accurate.

- The Department should not have terminated the verification. The Department had before it a significant quantity of information which was directly relevant to the calculation of a rate.

- The defendant misconstrued plaintiff's argument that the 8th amendment applies to the selected rate. Contrary to the allegations of defendant, plaintiff was not challenging the underlying AD/CVD laws under the 8th amendment, but rather this challenge went solely to the question as to whether the 8th amendment analysis applies to a rate calculated using adverse facts. The Court has not ruled previously on this issue and the language of the 8th amendment and the underlying Supreme Court precedent make it clear that an 8th amendment analysis should have been undertaken.

## II. ARGUMENT

### A. *The Department's Continued Support for the Application of Total Adverse Inferences is not Appropriate*

At pages 10-14 of its response, the Defendant continues to argue that the failure to provide details about small affiliates not involved in the manufacture of pasta in Italy nor in the export of goods justifies the application of total adverse inferences. This argument follows the primary flaw in all of the arguments presented in Defendant's reply, in that it does not take into account the small size of these entities and their limited volume of sales. A small error is not an appropriate basis for the imposition of total AFA.

As an initial matter, plaintiff stands on the argument in its initial 56.2 motion and memo in support and submits that the defendant's arguments do not overcome the arguments presented therein. While the Department did not collect the details about these entities, it saw information at verification establishing the minimal nature of these entities and cannot properly argue that these entities are significant. Furthermore, while the Department argues that it could not take new information because verification is not for the acceptance of new information, based on the affirmative claims of Gentile, the Department could still have verified the minimal nature of the error without collecting new information.

In this case, the Department detected a minor flaw - the claimed unreporting of two small entities that would not have been required to submit a full questionnaire response and were not listed in the affiliated parties response as required to file a response. Gentile properly stated that the only entity required to file a response was Gentile. The Department could have verified this fact which, in turn, would have

3

established that such other entities did not need to report. Furthermore, the small size of these entities was also provided. In Gentile's supplemental response of May 24, 2023 at page 2 of Exhibit S-6a (Rec. at C.R. 18, pages 47 and 49) it disclosed the existence of the purportedly unreported entities showing the amount of ownership in each entity by Gentile. See also Exhibit S-7a (Rec. at C.R. 19, pages 40 and 52). The information about these entities was not new information, nor required the submission of new *information, but rather verification would have simply entailed a review of the information* ordinarily reviewed and examined in verification. Gentile's claim that it was the only entity required to report, is also an implied claim that no other entity is required to report. This was harmless error and the fact that it was harmless error could easily have been confirmed by the Department at verification by reviewing facts and claims of record If the Department were to apply AFA in this case, it would be particularly offensive as the record establishes that any subsidies received by Gentile, the mandatory respondent, were minimal, and a significant portion of the subsidies calculated in the preliminary results were in fact, calculated in error.

Gentile submits that the Department cannot take a minor error, "inflate the size of the error" by purposefully ignoring proffered information establishing the minor nature of the error, and then impose significant punishment for the minor error in the form of extreme margins.

### B. *The Department's Selected Rate was not Reasonable*

At pages 14-19 of its response, the Defendant argued that the selected AFA rate was properly calculated. Initially, plaintiff relies primarily on the argument that

4

it presented in pages 20 - 22 of its 56.2 memo in support. Defendant's response does not overcome the arguments presented by plaintiff. Such AFA rate was calculated by taking every theoretical CVD rate and summing them together. Such rate is excessive and unreasonable on its face. The rate included numerous programs that bore no relationship to domestic sales. There was no evidence of exports by any other entity. Further, numerous programs were established to not have been used, both in the verified responses of the Government of Italy, and in the details presented by Gentile. The Department has a goal of accuracy in its calculations (*F.Lli De Cecco Di Filippo Fara S. Martino S.P.A. v. United States*, 216 F.3d 1027 (2000) (Fed. Cir). See also *NTN Bearing Corp. v. United States*, 74 F.3d 1204 (Fed. Cir. 1995), *Rhone Poulenc, Inc. v. United States*, 899 F.2d 1185 (Fed. Cir. 1990)) and *Diamond Sawblades Manufacturers' Coalition v. United States*, 986 F.3d 1351 (Fed. Cir. 2021). A rate which is many multiples of the highest rates calculated for Italy in this matter is on its face, is inherently inaccurate.

    C.    *The Department Should Not Have Terminated the Verification*

At pages 16 – 21, the Defendant argued that the refusal to complete this verification was reasonable. Initially, plaintiff relies primarily on the argument that it presented in pages 13-14 of its 56.2 memo in support. Defendant's response does not overcome the arguments presented by plaintiff. The decision to refuse to complete verification was based, in part, on an inaccurate belief that the proper "non-reporting" of certain unrelated entities could not have been verified through the use of information that was already of record. Furthermore, a respondent is not required

to be perfect, and the Department should have verified the data of record which would have established that the remaining data submitted was reliable.

### D.     The Defendant Misconstrues Plaintiff's 8th Amendment Argument

At pages 21 to 22 of its response, the defendant argues that the 8th amendment does not apply as Antidumping and Countervailing Duties are remedial in nature and that the Courts have consistently found that such duties are remedial in nature.  In doing so, defendant makes an incorrect statement – that the 8th Amendment argument has previously been rejected by the Courts.   The Defendant makes a bald assertion and fails to provide a citation to this purported non-consideration.  Such statement appears to be based on a conflating of the AD/CVD provisions and the AFA provisions.    Plaintiff does not disagree with the basic premise, that AD/CVD duties calculated normally are not under the scope of the AFA, but also submits that this basic premise is also inapplicable in this matter.  Plaintiff has not argued that duties imposed normally under the antidumping or countervailing duties might fall afoul of the 8th Amendment.   Plaintiff has argued that the application of AFA in calculating such duties falls under the provisions of the 8th amendment.  As discussed in detail in plaintiff's 56.2 motion, (See pages 22 to 31) the AFA provision is more than remedial and plaintiff submits that defendant's argument has not overcome those arguments presented by plaintiff in the initial briefing.  Simply put, it is **not** the application of trade duties which triggers review under the 8th Amendment, it is the application of trade duties **based on adverse inferences** which triggers such review.

In deciding whether the 8th Amendment applies a number of questions should be addressed.

1. Are the additional duties more than remedial in nature. If the duties are more than remedial in nature, the 8th Amendment applies. If they are merely remedial, the 8th Amendment does not apply.

2. Are the amount of the duties proportional and reasonable. The amount of the duties must be reasonably related to the conduct seeking to be punished.

   i. There Can be no Dispute that AD/CVD Duties Imposed using AFA are More than Remedial

In this case there can be no reasonable disagreement that the application of AFA is intended to have more than a remedial impact. This was detailed in plaintiff's 56.2 motion. (See pages 24 to 25). The Department has clearly stated, in fact it did so in connection with the Pasta Orders, that the intent of the **AFA provision is**, at least in substantial part, **deterrence**. In *F. Lli De Cecco Di Filippo Fara S. Martino v. United States*, 216 F. 3d 1027 (Fed. Cir. 2000) the Court stated:

> Particularly in the case of an uncooperative respondent, Commerce is in the best position, based on its expert knowledge of the market and the individual respondent, to select adverse facts that will create the proper **deterrent** to non-cooperation with its investigations and assure a reasonable margin. Commerce's discretion in these matters, however, is not unbounded.
>
> As the Court of International Trade pointed out in its decision * * * an adverse facts available rate to be a reasonably accurate estimate of the

7

respondent's actual rate, **albeit with some built-in increase intended as a deterrent to non-compliance**.
*DeCecco* at 1032. (Citations Omitted)

Plaintiff submits that it is incontrovertible that a duty calculated by means of AFA has at least some "deterrence" and is more than "remedial" in nature. This is an important distinction. Supreme Court precedent makes it clear that if one of the purposes of an exaction is deterrence, such exaction is not solely remedial and is thus, at least in part, penal in nature. See *Austin v. United States* 509 *U.S.* 602 (1993) ("{A} **civil sanction that cannot fairly be said *solely* to serve a remedial purpose**, but rather can only be explained as also serving either retributive or **deterrent** purposes, **is punishment**, as we have come to understand the term.") Such sanctions that have more than a remedial purpose fall under the 8th Amendment.

While the issue as to the applicability of the 8th Amendment to the application of AFA has never been directly addressed, the 8th Amendment has been found to apply to other assessments made by the United States at the time of importation, and the 8th Amendment is not limited in scope. See *United States v. Bajakajian,* 524 U.S. 321 (1998).

    ii.  Duties Imposed Under AFA Must be Reasonably Related to the Conduct to be Deterred

Since the purpose of the AFA provision in the trade laws is not solely remedial, but rather is intended to deter non-compliance, the appropriateness of the relief and whether it is excessive must be subject to analysis under the 8th Amendment. The underlying analysis under the 8th Amendment is not complicated. The language of the 8th Amendment is clear and unequivocal. It states:

> Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted.
> U.S. Constitution, Amendment VIII

Thus, if an extraction or assessment is a fine, it must not be excessive and if it is excessive, it is in violation of the 8th Amendment and cannot stand.

The seminal case is *United States v. Bajakajian*, 524 U.S. 321 (1998). Bajakajian provides a definite standard for testing whether a fine is reasonable for the purposes of the 8th Amendment. The Supreme Court stated:

> The touchstone of the constitutional inquiry under the Excessive Fines Clause of U.S. Const. amend. VIII is the principle of proportionality. The **amount of the forfeiture must bear some relationship to the gravity of the offense that it is designed to punish**.
> *United States v. Bajakajian*, 524 U.S. 321 (1998)

In this case, we have near perfect knowledge as to the rate which would have applied if the Department had not taken adverse inferences and applied adverse facts.

9

The rate in question would have been 1.79%. The rate applied was 88.67%. Thus, the amount of "punishment" which is the amount which goes beyond remedial is approximately 86%, or a multiple of more than 40 of the remedial portion of the duty. The Department should have, and the Court should now consider, whether a multiple of more than 40 times the correct rate bears any relationship to the gravity of the offense. The Court should also reject defendant's claim that the 8th amendment does not apply as such claim is contrary to well established Supreme Court precedent.

### III. CONCLUSION

Pastificio Gentile respectfully submits that the Department should reject the arguments presented in defendant's response. These arguments do not overcome the arguments presented by plaintiff in its original 56.2 motion and memorandum in support.

Accordingly, the Court should remand this matter to the Department with direction that the Department recalculate the rate for Gentile.

Respectfully submitted,

/s/ David J. Craven

David J. Craven
Counsel to Pastificio Gentile S.r.l.

Date April 21, 2025          Craven Trade Law LLC
3744 N Ashland
Chicago, IL 60613
(773) 245-4010
dcraven@craventrade.com

11