Slip Op. 25-115

# UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| PASTIFICIO GENTILE S.R.L., | |
| Plaintiff, | Before: Mark A. Barnett, Chief Judge |
| v. | Court No. 24-00037 |
| UNITED STATES, | PUBLIC VERSION |
| Defendant. | |

## OPINION AND ORDER

[Remanding in part and sustaining in part the U.S. Department of Commerce's final results in the administrative review of the countervailing duty order on certain pasta from Italy.]

Dated: August 27, 2025

David J. Craven, Craven Trade Law LLC, of Chicago, Illinois, for Plaintiff Pastificio Gentile S.r.l.

Sosun Bae, Senior Trial Counsel, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, of Washington, DC, for Defendant United States. Also on the brief were Brett A. Shumate, Acting Assistant Attorney General, Patricia M. McCarthy, Director, and Reginald T. Blades, Jr., Assistant Director. Of counsel on the brief was Brien Stonebreaker, Attorney, Office of the Chief Counsel for Trade Enforcement and Compliance, U.S. Department of Commerce, of Washington, DC.

     Barnett, Chief Judge: Before the court is a motion for judgment on the agency record pursuant to U.S. Court of International Trade ("CIT") Rule 56.2 challenging the final results of the U.S. Department of Commerce's ("Commerce or "the agency") administrative review of the countervailing duty ("CVD") order on certain pasta from Italy. See Certain Pasta From Italy, 89 Fed. Reg. 3,382 (Dep't Commerce Jan. 18,

2024) (final results of CVD admin. rev.; 2021) ("*Final Results*"), ECF No. 14-4,[1] and accompanying Issues and Decision Mem., C-475-819 (Jan. 11, 2024) ("I&D Mem."), ECF No. 14-5; Confid. Pl.'s Mot. for Summ. J. on the Agency R., ECF No. 20, and accompanying Confid. Mem. of Law in Supp. ("Pl.'s Mem."), ECF No. 20-1.

Plaintiff Pastificio Gentile S.r.l. ("Gentile") argues that Commerce (1) inappropriately used total facts available with an adverse inference for Gentile,[2] (2) abused its discretion by terminating the verification early, and (3) applied a subsidy rate that violates the Excessive Fines Clause of the Eighth Amendment. Pl.'s Mem. at 9, 13, 26. Defendant United States ("the Government") urges the court to sustain the *Final Results*. *See* Confid. Def.'s Resp. to Pls.' Mot. for J. Upon the Agency R. ("Def.'s Resp."), ECF No. 27. For the reasons discussed herein, the court affirms, in part, and remands, in part, the *Final Results*.

---

[1] The administrative record filed in connection with the *Final Results* is divided into a Public Administrative Record ("PR"), ECF No. 14-2, and a Confidential Administrative Record ("CR"), ECF No. 14-3. Plaintiff submitted joint appendices containing record documents cited in the parties' briefs. *See* Confid. J.A., ECF No. 33; Public J.A., ECF No. 34. Because Plaintiff relies on the public or confidential administrative record number to identify record documents in the joint appendices, the court likewise cites to the PR or CR, as appropriate.

[2] While the phrases "total adverse facts available" and "total AFA" are not referenced in either the statute or the agency's regulations, they can be understood, within the context of this case, to refer to Commerce's application of the "facts otherwise available" and "adverse inference" provisions of 19 U.S.C. § 1677e after finding that it could not accurately determine a countervailable subsidy rate with the information submitted by respondents in this review and could not fill in the gaps in information without undue difficulty. *See Mukand Ltd. v. United States*, 767 F.3d 1300, 1308 (Fed. Cir. 2014).

## BACKGROUND

On July 24, 1996, Commerce issued a CVD order on certain pasta from Italy. *Certain Pasta From Italy*, 61 Fed. Reg. 38,544 (Dep't Commerce July 24, 1996) (notice of CVD order and am. final affirmative CVD determination). On September 6, 2022, Commerce initiated an administrative review of the order for the 2021 period of review ("POR"). *Initiation of Antidumping and Countervailing Duty Admin. Revs.*, 87 Fed. Reg. 54,463, 54,473 (Dep't Commerce Sept. 6, 2022). Commerce selected Gentile to participate as a mandatory respondent. I&D Mem. at 2.

In its questionnaire to Gentile, Commerce requested that Gentile identify all affiliated companies and indicated this identification was "necessary early in this administrative review." CVD Questionnaire (Dec. 8, 2022) at III-2–III-3, PR 27. Gentile timely submitted its Affiliated Parties Response. Resp. to Affiliated Parties Portion of Sec. III of the Dep't's Initial Questionnaire (Dec. 22, 2022) ("Affiliated Parties Resp.") at 1, CR 5. In this response, Gentile reported two affiliates, Forno Gentile S.r.l and Agricola Gentile S.r.l., and indicated that neither company was involved in pasta production. *Id.* at 2.

Gentile provided a timely response to the remaining questions. Resp. to Sec. III of the Dep't's Initial Questionnaire (Feb. 7, 2023) ("Initial Questionnaire Resp.") at 1, PR 61. Gentile did not correct or add to its reported affiliates in any of its additional questionnaire responses. *See, e.g.*, Initial Questionnaire Resp. at III-3; Resp. to the Dep't's Suppl. Questionnaire (May 24, 2023), Ex. S-1, CR 18. Based on Gentile's reporting, Commerce determined a preliminary subsidy rate of 1.79 percent for Gentile.

*Certain Pasta from Italy*, 88 Fed. Reg. 45,886, 45,887 (Dep't Commerce July 18, 2023) (prelim. results and partial rescission of CVD admin. rev.; 2021) ("*Prelim. Results*").

After issuing the *Preliminary Results*, Commerce scheduled a three-day on-site verification at Gentile's facility in Gragnano, Italy. *See* Verification of [Gentile] (Sept. 29, 2023) ("Verification Agenda") at 1, PR 106. In the Verification Agenda, Commerce stated that "verification is not intended to be an opportunity for the submission of new factual information" and warned that a failure to cooperate could result in the agency "relying on adverse 'facts available'" pursuant to 19 U.S.C. § 1677e. *Id.* at 1–2.

During verification, Commerce "discovered multiple discrepancies between the information presented at verification and the information in Gentile's response to Section III of the Initial Questionnaire." I&D Mem. at 5. Specifically, Commerce found that "Gentile failed to report multiple affiliated companies . . . that were active during the POR."[3] *Id.* After Commerce discovered this new information, Commerce "concluded verification without analyzing other information submitted by Gentile." *Id.* Commerce stated that Gentile's failure to disclose the existence of its affiliates rendered the agency "unable to examine the full scope of subsidies attributable to any cross-owned and/or trading companies involved with the subject merchandise in a timely manner." *Id.* at 7.

Commerce issued the *Final Results* on January 18, 2024. 89 Fed. Reg. at 3,382. For the *Final Results*, Commerce relied on the facts available with an adverse inference

---

[3] The unreported affiliates were [[ ]] (the "Omitted Affiliates"). *See* Verification of the Questionnaire Resp. of [Gentile] (Nov. 2, 2023) ("Verification Report") at 3, CR 50; *see also* I&D Mem. at 5.

to determine Gentile's rate because Gentile: (1) withheld requested information, (2) failed to provide timely responses in the required format, (3) significantly impeded the proceeding, and (4) failed to cooperate to the best of its ability. I&D Mem. at 7. Commerce determined that Gentile's omissions called into question the accuracy and completeness of Gentile's responses. *Id.* at 13. Commerce also found that it lacked the information necessary to "examine the complete scope of subsidies provided to Gentile and its cross-owned affiliates/trading companies." *Id.* at 7. As an adverse inference, Commerce determined that "Gentile used and benefited from each program under review" during the POR. *Id.* Commerce considered three factors when selecting the AFA rate: "(1) the need to induce cooperation; (2) the relevance of a rate to the industry in the country under investigation or review; and (3) the relevance of a rate to a particular program." *Id.* at 9. For the *Final Results*, Commerce applied the highest non-*de minimis* rate for each of the programs subject to review, based on same or similar programs previously countervailed in this proceeding, as well as the income tax program, for a total AFA rate of 88.67 percent for Gentile. *Id.* at 10, 13. Commerce selected this rate to "effectuate the statutory purpose" of 19 U.S.C. § 1677e: "to induce respondents to provide Commerce with complete and accurate information in a timely manner." *Id.* Commerce determined that it was not required to corroborate the AFA rates "because the selected program-specific rates [were] all from a prior segment of [the same] proceeding." *Id.* at 12–13.

Court No. 24-00037                                                                Page 6

### JURISDICTION AND STANDARD OF REVIEW

The court has jurisdiction pursuant to section 516A(a)(2)(B)(iii) of the Tariff Act of 1930, as amended, 19 U.S.C. § 1516a(a)(2)(B)(iii) (2018),[4] and 28 U.S.C. § 1581(c). The court will uphold an agency determination that is supported by substantial evidence and otherwise in accordance with law. 19 U.S.C. § 1516a(b)(1)(B)(i). The court reviews "verification procedures employed by Commerce in an investigation for abuse of discretion." *Micron Tech., Inc. v. United States*, 117 F.3d 1386, 1396 (Fed. Cir. 1997).[5]

### DISCUSSION

When "necessary information is not available on the record," or an interested party "withholds information" requested by Commerce, "fails to provide" requested information by the submission deadlines, "significantly impedes a proceeding," or provides information that cannot be verified pursuant to 19 U.S.C. § 1677m(i), Commerce "shall . . . use the facts otherwise available." 19 U.S.C. § 1677e(a). Once Commerce determines that the use of facts otherwise available is warranted, if Commerce also "finds that an interested party has failed to cooperate by not acting to the best of its ability to comply with a request for information," Commerce "may use an inference that is adverse to the interests of that party in selecting from among the facts

---

[4] All citations to the Tariff Act of 1930, as amended, are to Title 19 of the U.S. Code, and references to the U.S. Code are to the 2018 edition, unless stated otherwise.
[5] Although *Micron Tech.* involved a Commerce decision governed by an earlier version of the statute, it remains relevant because the governing language of the statute is unchanged.

otherwise available." *Id.* § 1677e(b). "Compliance with the 'best of its ability' standard is determined by assessing whether a respondent has put forth its maximum effort to provide Commerce with full and complete answers to all inquiries in an investigation." *Nippon Steel Corp. v. United States*, 337 F.3d 1373, 1382 (Fed. Cir. 2003); *see also Essar Steel Ltd. v. United States*, 678 F.3d 1268, 1275–76 (Fed. Cir. 2012). Commerce's ability to apply total AFA ensures "that the party does not obtain a more favorable result by failing to cooperate than if it had cooperated fully." *Nan Ya Plastics Corp., Ltd. v. United States*, 810 F.3d 1333, 1338 (Fed. Cir. 2016).

Commerce uses total AFA when "none of the reported data is reliable or usable." *Zhejiang DunAn Hetian Metal Co. v. United States*, 652 F.3d 1333, 1348 (Fed. Cir. 2011). Commerce also "has a practice of applying total AFA where a company does not timely report its affiliations" because Commerce considers that the reported information may be incomplete. *Uttam Galva Steels Ltd. v. United States*, 45 CIT __, __, 518 F. Supp. 3d 1333, 1338 (2021) (citation omitted). When applying total AFA, Commerce has discretion to use the highest countervailable subsidy rate, and the agency is not required to estimate what the subsidy rate would have been if the respondent had cooperated to the best of its ability. 19 U.S.C. § 1677e(d)(2)-(3).

**I.	Substantial Evidence Supports Commerce's Application of Total AFA**

Gentile contends that the omission of "two small entities . . . that would not have been required to submit a full questionnaire response" was a minor flaw and harmless error that "could easily have been confirmed" by Commerce at verification. Pl.'s Mem. at 11. Gentile also contends that it provided Commerce with information showing the

"minor nature" of the Omitted Affiliates, but the agency "refused to accept, let alone review, the information which established" that Gentile's omission was "a minor flaw in reporting." *Id.* Gentile asserts that the omitted entities were disclosed in the exhibits to its supplemental responses, but the agency did not inquire about them until verification.[6] *Id.* at 12. Finally, Gentile contends that the "appropriate response" for its failure to identify the entities in the Affiliated Parties Response would have been for Commerce "to fill the gaps with neutral facts available." *Id.* at 13.

The Government contends that Commerce's application of total AFA, which was based on Gentile's failure to identify required affiliates in a timely manner, is supported by substantial evidence and in accordance with law. Def.'s Resp. at 10. The Government also argues that Gentile did not remedy its failure by identifying the Omitted Affiliates in any subsequent responses to Commerce. *Id.* In reply, Gentile claims that its failure to report the Omitted Affiliates was a small error, and that "[a] small error is not an appropriate basis for the imposition of total AFA." Pl.'s Reply Br. ("Pl.'s Reply"), ECF No. 31.

Looking first at Gentile's failure to report the Omitted Affiliates, Commerce explained that without full and accurate responses to its questions, the agency could not properly determine which affiliates met the criteria for cross-ownership and, therefore, it could not determine from which entities it would require full subsidy information. I&D

---

[6] Gentile asserts that [[                                      ]] were disclosed in Exhibit S-6a and [[                           ]] was also disclosed in Exhibit S-7a. Pl.'s Mem. at 12. Gentile does not assert that [[               ]] was disclosed in any of its responses.

Mem. at 6. Commerce explained that, because of Gentile's omissions, the agency was not able to conduct a complete and accurate analysis of Gentile's affiliations and the full scope of subsidies potentially attributable to Gentile in a timely manner, so the use of total AFA was warranted. *Id.* at 7.

When relying on total AFA, Commerce must "examine the record and articulate a satisfactory explanation for its action." *Yangzhou Bestpak Gifts & Crafts Co. v. United States*, 716 F.3d 1370, 1378 (Fed. Cir. 2013) (holding that the agency may not base its determination on "mere conjecture or supposition"). "The statutory trigger for Commerce's consideration of an adverse inference is simply a failure [of the responding party] to cooperate to the best of respondent's ability, regardless of motivation or intent." *Nippon Steel*, 337 F.3d at 1383. "[T]he statutory mandate that a respondent act to 'the best of its ability' requires the respondent to do the maximum it is able to do" to provide full and complete answers to all of Commerce's inquiries. *Id.* at 1382.

Commerce's application of total AFA is supported by substantial evidence and in accordance with law. Pursuant to 19 U.S.C. § 1677e(a), Commerce must make two showings to determine that a foreign importer did not act to the best of its ability and draw adverse inferences. *Id.* at 1382–83. First, Commerce "must make an objective showing that a reasonable and responsible importer would have known that the requested information was required to be kept and maintained." *Id.* The agency requires respondents to report affiliate information early in the investigation or review so that Commerce may determine which entities must supply additional information. *E.g., Uttam Galva Steels Ltd. v. United States*, 44 CIT __, __, 425 F.Supp.3d 1366, 1372

Court No. 24-00037                                                                                                              Page 10

(2020) (rejecting plaintiff's argument because it "ignore[d] the importance that Commerce places on receiving affiliated company information early in the proceeding"); see also CVD Questionnaire at III-2–III-3. Commerce requests this information from respondents so it can "determine whether such affiliates are cross-owned with the respondent and . . . may meet the requirements for attribution of subsidies provided in 19 CFR 351.525(b)(6)." I&D Mem. at 6.

    Gentile does not dispute that it maintained the information and simply failed to report it in its Affiliated Parties Response. In its questionnaire to Gentile, Commerce instructed Gentile to provide "[t]he identity of all companies with which [the] company is affiliated" and "complete responses for 'cross-owned' affiliate companies." Id. at 5–6. Gentile did not report all its affiliates in its Affiliated Parties Response. See Affiliated Parties Resp. at 2 (naming two affiliates only). Moreover, Gentile clearly maintained information on at least some of its affiliates because it acknowledges that it referenced them elsewhere in its responses. See Pl.'s Mem. at 12.

    Second, Commerce must subjectively demonstrate that "the failure to fully respond [results from] respondent's lack of cooperation in either: (a) failing to keep and maintain all required records, or (b) failing to put forth its maximum efforts to investigate and obtain the requested information from its records." Nippon Steel, 337 F.3d at 1382–83 (interpreting 19 U.S.C. § 1677e(a)). Here again, Gentile did not produce the requested information in its Affiliated Parties Response or when responding to the remaining parts of the initial questionnaire. Affiliated Parties Resp. at 2; Initial Questionnaire Resp. at III-3. Gentile did not fail to keep or maintain the required

Court No. 24-00037 Page 11

records, because Commerce discovered the existence of the Omitted Affiliates by means of information provided by Gentile at verification. Verification Report at 3–4. Additionally, Gentile included two of the Omitted Affiliates in exhibits provided in response to other questions. *See supra* note 6. Thus, Gentile failed to put forth its maximum efforts to report all of its affiliates in its Affiliated Parties Response.

For these reasons, Commerce's decision to rely on total adverse facts available to determine Gentile's subsidy rate is supported by substantial evidence.[7]

## II. Commerce Did Not Abuse Its Discretion When It Terminated the Verification

Gentile contends that Commerce's decision to terminate the verification early was an overreaction "and an abuse of discretion." Pl.'s Mem. at 13. Gentile contends that terminating the verification on its second day "foreclosed Gentile the opportunity to prove the accuracy of the voluminous information submitted by Gentile." *Id.* at 14.

The Government responds that because Gentile failed to report all affiliates, the agency was "left uninformed" and had already told Gentile that verification was not an opportunity to submit new facts. Def.'s Resp. at 19. The Government argues that Gentile's failure "called into question whether all subsidies were reported, as well as the accuracy and completeness of its submissions," and Commerce acted within its discretion when it decided not to verify the other information. *Id.* at 20.

---

[7] Gentile invokes 19 U.S.C. § 1677m(e) to argue that Commerce should have used certain record information to "temper the AFA margin." Pl.'s Mem. at 19–20. Plaintiff overlooks the requirement for a respondent to act "to the best of its ability in providing the information," 19 U.S.C. § 1677m(e)(4), for that statutory provision to apply.

Court No. 24-00037                                                                                                              Page 12

Verification is a process during which Commerce seeks to confirm "'the accuracy and completeness' of factual information submitted by interested parties," before the agency makes a final determination. *Gov't of Quebec v. United States*, 105 F.4th 1359, 1364 (Fed. Cir. 2024) (quoting 19 C.F.R § 351.307(d)). Verification is therefore not an opportunity to submit new factual information. I&D Mem. at 14; Verification Agenda at 1–2. And here, Gentile did not proffer information at verification about the Omitted Affiliates in the first instance; rather, Commerce discovered the omission while reviewing Gentile's accounting system. Verification Report at 3–4. For this reason, Gentile's arguments regarding the minor or minimal nature of the Omitted Affiliates are wholly misplaced. *See* Pl.'s Mem. at 14–16. By failing to report these entities, Gentile left Commerce unable to determine for itself whether the companies would have been required to provide complete questionnaire responses. I&D Mem. at 13. And as discussed, this is a determination Commerce must make early in the proceeding, not at verification. *Id.*

It is not for a respondent to substitute its judgment for that of the agency's when deciding what information to report in its questionnaire responses. *See, e.g., SeAH Steel Corp. v. United States*, 47 CIT \_\_, \_\_, 659 F. Supp. 3d 1318, 1326 (2023). Moreover, Gentile's suggestion that Commerce "'manipulate[d]' the record" by declining to accept new information *after* Commerce discovered the Omitted Affiliates is without

Court No. 24-00037     Page 13

legal basis. *See* Pl.'s Mem. at 15–16.[8] Accordingly, Commerce's decision to terminate verification early upon discovering the Omitted Affiliates was not an abuse of discretion. *Cf. Gov't of Quebec*, 105 F.4th at 1369–70 (affirming the termination of verification due to discrepancies between the original sales documents and the respondent's submitted information).

### III. Commerce's Application of Total AFA Does Not Violate the Eighth Amendment

Gentile contends that a rate based at least in part on adverse facts available serves as punishment for an offense and is subject to the Eighth Amendment to the U.S. Constitution. Pl.'s Mem. at 27.[9] Gentile contends that the rate Commerce applied is excessive and in violation of the Eighth Amendment, because it is not "[r]easonably [r]elated to the [c]onduct" the AFA statutory provisions seek to deter. Pl.'s Reply at 9.

---

[8] Gentile also suggests that any statement by the Government that the omissions were substantial in nature would be untrue, even going so far as to recite the Rules of Professional Responsibility. Pl.'s Mem. at 16. As Commerce explained, however, "Commerce's discovery of unreported affiliated companies during verification is not minimal in nature, as it calls into question whether all subsidies received by Gentile (via any cross-owned affiliates) have been reported." I&D Mem. at 18. Commerce's decision to conclude verification was not based on the significance of the Omitted Affiliates per se, but on the agency's belated discovery of these affiliates, owing to Gentile's failure to report them. *See id.* Gentile's "arguments [thus] fundamentally misunderstand the significance of a respondent's affiliation response, as well as the basis for Commerce's application of AFA." Def.'s Resp. at 11.

[9] Gentile argues broadly that "the selected facts must have a relationship to reality," Pl.'s Mem. at 20 (formatting omitted), and that Commerce "must consider the magnitude of the error and the impact on the results," *id.* at 22 (formatting omitted). But to support these broad assertions, Gentile relies on arguments implicating the Eighth Amendment to the U.S. Constitution. *See id.* at 20–31. Thus, the court considers the arguments actually raised and not merely alluded to.

The Government contends that trade remedy laws are remedial, rather than punitive, in nature. Def.'s Resp. at 21. The Government further contends that even if the court were to review Commerce's rate pursuant to the Eighth Amendment,[10] the court should find that the applied rate "is proportional to Gentile's failure to cooperate to the best of its ability." *Id.* at 22.

The Eighth Amendment to the U.S. Constitution states that "excessive fines" shall not be imposed. U.S. Const. amend. VIII. The Amendment "limits the government's power to extract payments, whether in cash or in kind, 'as *punishment* for some offense.'" *Austin v. United States*, 509 U.S. 602, 609–10 (1993). The Excessive Fines Clause applies to sanctions that are punitive, rather than remedial, *United States v. Bajakajian*, 524 U.S. 321, 333–34 (1998), and when determining whether a fine is excessive, the court considers whether "[t]he amount of the forfeiture . . . bear[s] some relationship to the gravity of the offense that it is designed to punish," *id.* at 334. However, a rate selected by Commerce using AFA that is "in accordance with the statutory requirements is not a punitive measure, and the limitations applicable to punitive damages assessments therefore have no pertinence to duties imposed based on lawfully derived margins." *KYD, Inc. v. United States*, 607 F.3d 760, 768 (Fed. Cir. 2010). Thus, if the rates applied by Commerce are in accordance with their statutory

---

[10] The Government maintains that the Eighth Amendment does not apply to judicial review of Commerce's use of AFA to assign a subsidy rate. Def.'s Resp. at 22.

requirements, then there is likely no constitutional issue pursuant to the Eighth Amendment. *Rimco Inc. v. United States*, 98 F.4th 1046, 1054–55 (Fed. Cir. 2024).[11]

Gentile makes no effort to address *Rimco* (or *KYD*) in its moving or reply briefs. *See* Pl.'s Mem. at 25 (asserting instead that "the issue as to the applicability of the [Eighth] Amendment to [trade remedy] proceedings has never been directly addressed"); Pl.'s Reply at 8 (stating same with respect to AFA specifically). Gentile goes to great lengths to argue that the Eighth Amendment applies to a duty assessment based on AFA because such assessment is a fine. *See* Pl.'s Mem. at 26–28. But that is not the question. Rather, the question is whether Commerce complied with the statute when it selected the rates to use as AFA.[12] *See Rimco*, 98 F.4th at 1054.

---

[11] *Rimco* addresses the need to exhaust administratively arguments implicating the Eighth Amendment. 98 F.4th at 1054–55. The appellate court reasoned that so doing would allow Commerce to "review the statutory appropriateness of its . . . rates, including those based on adverse facts available," and consider the "facts to determine whether its rates were proportional to the harm they were intended to address and 'necessary to serve the purpose of deterrence.'" *Id.* at 1054 (quoting *BMW of N. Am. LLC v. United States*, 926 F.3d 1291, 1300 (Fed. Cir. 2019)). The court further stated that "Commerce could typically dispose of the constitutional issue by reviewing the rates for statutory compliance (i.e., finding the rates not excessive)." *Id.* (citing *KYD*, 607 F.3d at 768). While *Rimco* relies on *BMW of North America* for the proposition that Commerce should consider relevant facts, the current version of 19 U.S.C. § 1677e(d)(2) permits Commerce to use the subsidy rates specified under 19 U.S.C. § 1677e(d)(1) based on the agency's evaluation of the situation (i.e., the facts) that resulted in the use of AFA. *See BMW of N. Am.*, 926 F.3d at 1301 n.3 (noting that the majority opinion, which addressed an earlier version of the statute, was consistent with the amendments to section 1677e(d)(2)).

[12] Gentile does not speak to whether the relevant Eighth Amendment issue is the rate selected for each individual subsidy program or the aggregate subsidy rate determined by Commerce. In the absence of argument by the parties, the court declines to address this issue.

On that point, Gentile raises no substantive arguments. Gentile asserts that "we have near perfect knowledge as to the rate which would have applied if the [agency] had not taken adverse inferences," Pl.'s Mem. at 29; *see also* Pl.'s Reply at 9–10 (same), but that is precisely what the statute does *not* require Commerce to consider, *see* 19 U.S.C. § 1677e(d)(3)(A) (stating that Commerce "is not required" to "estimate what the countervailable subsidy rate . . . would have been" if the respondent had cooperated).[13] Thus, Gentile's argument, which rests on this faulty premise that the total AFA rate is simply too high, *see* Pl.'s Mem. at 30; Pl.'s Reply at 10, lacks merit. Commerce found that the AFA rate was consistent with agency practice and the statute, I&D Mem. at 17, and Gentile does not argue otherwise. Accordingly, the court declines to remand the *Final Results* on this basis.

Nevertheless, while the court will sustain Commerce's application of total AFA and selection of program-specific AFA rates generally, one aspect of Commerce's application of total AFA in the *Final Results* requires remand for reconsideration or further explanation. In this review, the Government of Italy provided program-specific information to Commerce, and the agency verified that information. In making its objections to the AFA rate, Gentile argued that Commerce should take account of programs that were found to have been terminated or non-countervailable. Case Br. (Nov. 27, 2023) at 20, CR 52. In addressing Gentile's comments, Commerce stated

---

[13] Gentile relies on 19 U.S.C. § 1592 to argue that the total AFA rate "shocks the conscious [*sic*]," Pl.'s Mem. at 30, but does not explain why that provision, which governs penalty assessments by a different agency, is relevant here.

that it "determined not to include any previously terminated or non-countervailable programs in the AFA rate for Gentile." I&D Mem. at 17. While that might seem to be the end of it, Gentile argues to this court that "the non-usage of certain programs was confirmed in the verification and responses of the Government of Italy." Pl.'s Mem. at 22. In other words, while Commerce summarized Gentile's argument as having been limited to programs that were found to have been terminated or non-countervailable "in previous proceedings," I&D Mem. at 16, Gentile argued, both to the agency and this court, for the exclusion of programs for which "terminations have been established in both the preliminary and final determinations for earlier periods of review and by the submissions of the Government of Italy and the European Union in this review," Case Br. at 20. The Government's only response, consistent with Commerce's limited response in the I&D Memorandum, is that Commerce excluded "programs previously found to be terminated or non-countervailable." Def.'s Resp. at 5.

 Gentile appears to have identified certain programs that Commerce verified, using information submitted by the Government of Italy, were unused during this period of review. While Commerce excluded previously terminated or non-countervailable programs from its AFA determination, Commerce did not explain its legal basis for nevertheless including programs that it verified as not used in the current POR. Consequently, remand is necessary to allow Commerce to reconsider or explain its inclusion in Gentile's AFA rate of subsidy programs that it verified were unused during the period of review.

## CONCLUSION AND ORDER

In accordance with the foregoing, it is hereby

**ORDERED** that Commerce's *Final Results* are remanded in part to the agency for reconsideration or further explanation of its inclusion in Gentile's subsidy rate of programs for which the agency verified non-use during the period of review; it is further

**ORDERED** that the *Final Results* are sustained in all other respects; it is further

**ORDERED** that Commerce shall file its remand redetermination on or before November 25, 2025; it is further

**ORDERED** that subsequent proceedings shall be governed by CIT Rule 56.2(h); it is further

**ORDERED** that any comments or responsive comments must not exceed 3,000 words.

/s/    Mark A. Barnett
Mark A. Barnett, Chief Judge

Dated: August 27, 2025
New York, New York