C-475-819<br>
Remand<br>
Slip Op. 25-115<br>
POR: 01/01/2021 – 12/31/2021<br>
**Public Document**<br>
E&C/OI:  TP

***Pastificio Gentile S.R.L. v. United States*,**
**Consol. Court No. 24-00037; Slip Op. 25-115 (CIT August 27, 2025)**
**Certain Pasta from Italy**

**FINAL RESULTS OF REDETERMINATION**
**PURSUANT TO COURT REMAND**

**I.    SUMMARY**

The U.S. Department of Commerce (Commerce) prepared these final results of redetermination pursuant to the remand opinion of the U.S. Court of International Trade (Court or CIT) in *Pastificio Gentile S.R.L. v. United States*, Consol. Court No. 24-00037, Slip Op. 25-115 (August 27, 2025) (*Remand Order*).[1]  These final results of redetermination concern *Certain Pasta from Italy:  Final Results of Countervailing Duty Administrative Review; 2021*; 89 FR 3382 (January 18, 2024) (*Final Results*), and accompanying Issues and Decision Memorandum (IDM).  In the *Remand Order*, the Court ordered Commerce to reconsider or further explain the inclusion in Pastificio Gentile S.R.L's (Gentile) total adverse facts available (AFA) subsidy rate of certain subsidy programs for which Commerce verified with the Government of Italy (GOI) non-use during the period of review (POR).[2]  Pursuant to the Court's *Remand Order*, we further explain the rationale for including these subsidy programs in the total AFA rate calculations, but we make no changes to our calculations based upon our analysis.

---

[1] See *Pastificio Gentile S.R.L. v. United States*, Court No. 24-00037, Slip Op. 25-115 (CIT August 27, 2025) (*Remand Order*).
[2] *See Remand Order* at 18.

## II.    BACKGROUND

On September 6, 2022, Commerce initiated an administrative review of certain pasta (pasta) from Italy for four producers and exporters of the subject merchandise for the POR of January 1, 2021, through December 31, 2021.[3] On October 13, 2022, Commerce selected Pastificio Favellato Srl. (Favellato) and Pastificio Mediterranea S.R.L. (Mediterranea) as the mandatory respondents in this countervailing duty (CVD) administrative review.[4] On October 28, 2022, Commerce released the initial questionnaire to the GOI and the European Commission (EC) and informed the GOI that it was responsible for forwarding it to the mandatory respondents.[5] On December 7, 2022, Commerce selected Gentile as the mandatory respondent in the administrative review after Mediterranea and Favellato withdrew their requests for review.[6] On December 8, 2022, Commerce released replacement initial questionnaires to the GOI and EC and, once again, requested that the GOI forward the initial questionnaire to the respondent, Gentile.[7] From December 2022 to February 2023, Gentile, the GOI, and the EC timely filed responses to the initial questionnaire.[8]

In its response to the affiliation portion of the initial questionnaire, Gentile identified only two companies, Forno Gentile S.r.l (Forno) and Agricola Gentile S.r.l (collectively, reported affiliates), with which it is affiliated within the meaning of section 771(33) of the Tariff Act of 1930, as amended (the Act).[9] Further, Gentile explained that it did not intend to provide a

---

[3] *See Initiation of Antidumping and Countervailing Duty Administrative Reviews*, 87 FR 54463 (September 6, 2022).
[4] *See* Memorandum, "Respondent Selection Memorandum," dated October 13, 2022.
[5] *See* Commerce's Letters, "Countervailing Duty Questionnaire," dated October {28}, 2022.
[6] *See* Memorandum, "Second Respondent Selection," dated December 7, 2022; Mediterranea's Letter, "Withdrawal of Request for Administrative Review," dated October 31, 2022; and Favellato's Letter, "Withdrawal Request for Administrative Review," dated November 2, 2022.
[7] *See* Memorandum, "Countervailing Duty Questionnaire," dated December 8, 2022 (Initial Questionnaire).
[8] *See* Gentile's Letter, "Response to Affiliated Parties Portion of Section III of the Department's Initial Questionnaire," dated December 22, 2022 (Gentile AQR); *see also* Gentile's Letter, "Response to Section III of the Department's Initial Questionnaire," dated February 7, 2023 (Gentile IQR); GOI's Letter, "Submission of the Response," dated February 7, 2023 (GOIIQR); and EC's Letter, "Questionnaire Response," dated January 31, 2023 (ECIQR).
[9] *See* Gentile AQR.

complete Section III initial questionnaire response for the reported affiliates because neither company: (1) produced subject merchandise, (2) acted as a holding company, (3) supplied an input used in production, or (4) transferred a subsidy to Gentile.[10] Consequently, the only company to which Gentile provided a complete Section III initial questionnaire response was Gentile itself.

Likewise, the GOI's initial questionnaire response solely regarded Gentile itself.[11] The GOI acknowledged that the company under review was "Pastificio Gentile S.r.l."[12] In multiple instances, the GOI referred to benefits having been received or not received by Gentile specifically or "the company" as opposed to companies.[13] The EC provided underlying laws of the subsidy programs in its initial questionnaire response,[14] but the EC did not refer to Gentile or the company specifically beyond its certificates of service.[15] Commerce requested extensive further information regarding the reported affiliates in the first supplemental questionnaire to Gentile,[16] but Commerce did not request information regarding the reported affiliates from the GOI in supplemental questionnaires.[17]

On July 18, 2023, Commerce published the *Preliminary Results* assigning Gentile a preliminary subsidy rate of 1.79 percent *ad valorem* and finding, based upon information

---

[10] *Id*. at 4-5.
[11] *See, generally*, GOIIQR.
[12] *Id*. at 6-7.
[13] *Id*. at *e.g.*, 7 ("the company under review did not benefit from the programs listed in this section") and 17 ("Pastificio Gentile benefitted from the following deduction"). While the GOI does once refer to "companies under review" not benefitting from programs, the GOI only uses this language once in the narrative portion of its responses prior to providing its full questionnaire responses in annexes. *Id*. at 14, listing "companies under review" vis-à-vis *Id*. at 1-14, using "company" or "Pastificio Gentile" in all other situations. Commerce thus interprets this sole listing of "companies" as a typo. The GOI continues to broadly use this nomenclature throughout its later annexes. *See, generally*, GOIIQR.
[14] *See, generally*, ECIQR.
[15] *Id. e.g.*, Response of DG EMPL at 2 and Response of DG Comp at 2.
[16] *See* Commerce's Letter, "First Supplemental Questionnaire," dated May 3, 2023, at 1-2 (SQ1).
[17] *See* SQ1 at 4-8; *see also* Commerce's Letter, "Second Supplemental Questionnaire," dated June 15, 2023, at 1.

provided by Gentile, that neither of the reported affiliates met the requirements for attributing subsidies.[18]

After issuing the *Preliminary Results*, Commerce scheduled verification of the GOI's responses from October 19, 2023, through October 20, 2023, and Gentile's responses from October 23, 2023, through October 25, 2023, and outlined an agenda for the GOI verification examining three subsidy programs:  (1) Regional Tax on Income of Productive Activities Deduction in Accordance with Article 11 of Legislative Decree n. 446/1997 (IRAP*)*, (2) Article 56, paragraph 6, of Law Decree No. 18/2020 (COVID-19 Guarantee Fund), and (3) Fondo di Garanzia PMI (Guarantee Fund SME*)*.[19]

At verification, the GOI noted minor corrections to Gentile's use of one loan, and Commerce reviewed the program usage of the three programs for both Gentile and, where relevant, Forno.[20]  Commerce did not discuss and the GOI did not claim to provide information for other companies beyond Forno or Gentile.[21]  Commerce did not verify non-use of any of the three programs for other companies or discuss other programs.[22]  Subsequently, at verification of Gentile, Commerce found multiple discrepancies regarding the presence of previously unreported affiliates in Gentile's accounting system and Gentile's affiliation response.[23]  Specifically, Gentile did not report multiple affiliated companies that were active during the POR.[24]  Consequently, Commerce concluded its verification without analyzing other information submitted by Gentile.

---

[18] *See Certain Pasta from Italy:  Preliminary Results and Partial Rescission of Countervailing Duty Administrative Review; 2021*, 88 FR 45886 (July 18, 2023) (*Preliminary Results*), and accompanying Preliminary Decision Memorandum (PDM) at 9-10.
[19] *See* Commerce's Letter, "Verification of the Government of Italy," dated September 29, 2023 (GOI Verification Agenda); *see also* Commerce's Letter, "Verification of Pastificio Gentile S.r.l.," dated September 29, 2023.
[20] *See* Memorandum, "Verification of the Government of Italy," dated November 2, 2023 (GOI Verification Report) at 2-5.
[21] *Id*. at 4-5.
[22] *Id*. at 2-5.
[23] *See* Memorandum, "Verification of the Questionnaire Responses of Pastificio Gentile S.r.l.," dated November 2, 2023 (Gentile Verification Report).
[24] *Id*. at 3-4.

Following verification, we received timely filed case briefs from the GOI, Gentile, and Sgambaro SpA (Sgambaro), a company not selected for individual review.[25] On January 18, 2024, Commerce published the *Final Results* in which we found that application of total AFA was warranted based upon Gentile's non-cooperation with our requests for information regarding its affiliates,[26] and we applied a total AFA subsidy rate of 88.67 percent *ad valorem* to Gentile.[27]

### III. COMMERCE'S DRAFT RESULTS OF RDETERMINATION

Commerce released its Draft Results of Redetermination on January 12, 2026, and established January 15, 2026 as the deadline for interested parties to submit comments on the Draft Remand.[28] No interested parties commented on the Draft Remand. Therefore, our analysis here does not differ from the analysis in the Draft Remand.[29]

### IV.    ANALYSIS

Consistent with the *Remand Order*, Commerce reviewed and provides further explanation for its inclusion in Gentile's subsidy rate of programs that were verified as not used during the POR,[30] a subset that consists of only three programs (*i.e.*, IRAP, COVID-19 Guarantee Fund, and Guarantee Fund SME) as described above. Regarding these programs, we clarify that Commerce found the COVID-19 Guarantee Fund and Guarantee Fund SME programs to be not countervailable in the *Preliminary Results*, and Commerce did not incorporate either Guarantee Fund program into Gentile's total AFA rate.[31] Further, Commerce notes that the IRAP program was only incorporated as part of a collective 24.00 percent rate for

---

[25] *See* GOI's Letter, "Case Brief," dated November 27, 2023; Gentile's Letter, "Case Brief," dated November 27, 2023; and Sgambaro's Letter, "Case Brief," dated November 27, 2023.
[26] *See Final Results* IDM at Comment 1.
[27] *See Final Results*, 89 FR at 3383.
[28] *See* Draft Results of Redetermination Pursuant to Court Remand, *Pastificio Gentile S.R.L. v. United States*, Court No. 24-00037; Slip-Op. 25-115 (CIT August 27, 2025), dated January 12, 2026 (Draft Remand).
[29] *Id*.
[30] *Id*. at 18.
[31] *See Preliminary Results* PDM at 7-8; *see also* Memorandum, "AFA Memorandum for the Final Results," dated January 11, 2024 (AFA Rate Calculation) at 4-6.

5

19 income tax programs,[32] and, consequently, the inclusion or removal of the IRAP program would not individually affect the total AFA subsidy rate presuming that the other 18 tax programs continue to be incorporated.[33]  Thus, reconsideration of programs for which Commerce conducted verification at the GOI would not affect Gentile's total AFA subsidy rate.

We also note that the Court did not direct Commerce to reconsider all programs for which the GOI reported non-use but were not verified.[34]  However, we find that the same logic is equally applicable to all programs whether verified or not:  the GOI's responses and our verification did not cover companies of which Commerce was not aware at the time we received the responses or at the time we verified the programs.  Verification of Gentile and the discovery of the unreported affiliates occurred *after* the verification of the GOI.[35]  Simply put, Commerce could not and did not verify non-use of any programs for Gentile's unreported affiliates because Commerce had no previous knowledge of these companies while conducting verification with the GOI.

Fundamentally, we lack information on the possible program usage and benefit information of these previously unreported affiliates.  Without such information and in light of Gentile's non-cooperation, these programs are properly included in the total AFA rate as Commerce is applying an adverse inference in finding that these unreported affiliates used and benefited from the programs at issue.  Commerce's longstanding practice is to normally rely on

---

[32] In contrast to Commerce's standard AFA hierarchy, Commerce's practice with regard to income tax programs is to use the highest possible cumulative benefit for income tax programs, which is in this instance the 24 percent maximum income tax established by the GOI.  *See*, *e.g.*, *Aluminum Extrusions from the People's Republic of China:  Final Affirmative Countervailing Duty Determination*, 76 FR 18521 (April 4, 2011), and accompanying IDM at the section, "Application of Adverse Inferences:  Non-Cooperative Companies"; s*ee also Forged Steel Fluid End Blocks from Italy:  Preliminary Affirmative Countervailing Duty Determination, and Alignment of Final Determination with Final Antidumping Duty Determination*, 85 FR 31460 (May 26, 2020), and accompanying PDM at 13 (unchanged in *Forged Steel Fluid End Blocks from Italy:  Final Affirmative Countervailing Duty Determination*, 85 FR 80022 (December 11, 2020)); and *Final Results* IDM at 10.
[33] *See* AFA Rate Calculation at 5-6.
[34] *See* Remand Order at 18.
[35] *See* GOI Verification Report at 1; *see also* Gentile Verification Report at 1 (explaining that verification of the GOI occurred on October 19 and 20, 2023, and verification of Gentile took place on October 23 and 24, 2023).

the foreign producer's or exporter's records to determine the existence and amount of the benefit.[36] Without prior knowledge of these affiliates, which deprived Commerce of the ability to request information from these companies, we lack information concerning their usage and benefit information.

Furthermore, the notion that Commerce "verified" non-use is a misnomer. Due to Gentile's non-cooperation, we lacked all awareness of the unreported affiliates' existence, much less their usage and benefit information, at the time of verification with the GOI. Thus, benefit information for all programs could not possibly be verified at any level, because we did not know to look for usage information for the unreported affiliates. Consequently, the completion of verification with the GOI does not warrant removing any of the programs from the total AFA subsidy rate.

Moreover, the limited information that does exist on the record does not support removal of any subsidy programs. As described above,[37] neither the GOI nor EC claimed to provide a response for Gentile's unreported affiliates.[38] Similarly, at verification with the GOI, Commerce reviewed only limited aspects of Gentile's reported affiliates' subsidy usage and did not reference or address any unreported affiliates.[39] Moreover, had the GOI attempted to submit information regarding affiliates not reported in Gentile's affiliation questionnaire response, such information would have constituted new factual information, whose inclusion or exclusion was clearly communicated in the verification agenda for the GOI.[40] Specifically, Commerce stated,

---

[36] *See, e.g., Certain Hot-Rolled Carbon Steel Flat Products from India: Final Results of Countervailing Duty Administrative Review*, 75 FR 43488 (July 26, 2010), and accompanying IDM at 4; *see also Crystalline Photovoltaic Cells, Whether or Not Assembled Into Modules, from the People's Republic of China: Final Results of Countervailing Duty Administrative Review*, 83 FR 34828 (July 23, 2018), and accompanying IDM at 7; *Certain Softwood Lumber Products from Canada: Final Results of the Countervailing Duty Administrative Review; 2022*, 89 FR 67062 (August 19, 2024), and accompanying IDM at Comment 54.
[37] *See supra*, n.11-13.
[38] *See* GOIIQR at 6-7; *see also, generally*, ECIQR; and Gentile Verification Report at 3-4.
[39] *See, generally*, GOI Verification Report.
[40] *See, generally*, GOI Verification Agenda.

"Please note that verification is not intended to be an opportunity for submission of new factual information. New information will be accepted at verification only when: (1) the need for that information was not evident previously; (2) the information makes minor corrections to information already on the record; or (3) the information corroborates, supports, or clarifies information already on the record."[41]

In reevaluating the record, Commerce notes that one omitted affiliate does appear in the GOI's supplemental questionnaire response once regarding one program, but it is neither highlighted nor otherwise noted as having any connection to Gentile.[42] Further, as noted above, we have no information provided by the respondent company themselves regarding this affiliate's usage and benefit information. Because there is no indication that the GOI intended to provide a response for the omitted affiliates and Gentile failed to include this affiliate in its affiliation response, Commerce could not properly identify whether this company's use or non-use could reasonably be attributed to Gentile.[43] Commerce cannot ascertain whether the unreported affiliates did or did not use a program solely based off of their appearance – or lack thereof – in an exhibit provided by the GOI. The provided exhibit listing or not listing the unreported affiliates could be solely a snippet of a larger overall dataset, and assessing the completeness of the information provided by the GOI is a core function of verification.

Given that Commerce lacked usage and benefit information for these unreported affiliates, which would properly originate from Gentile, Commerce was precluded from reviewing the unreported affiliates subsidy usage by Gentile's non-cooperation, we were unable to verify any program sufficiently to warrant a finding of non-use for those unreported affiliates. As such, Commerce cannot rule out that the unreported affiliates used any or all subsidy

---

[41] *Id.* at 2.
[42] *See* GOI's Letter, "First Supplemental Questionnaire Submission," dated May 24, 2023, at Exhibit Su.1.H.1-IT & Su.1.H.1-EN).
[43] *Id.*

programs under review based upon information provided by the GOI, regardless of whether the program was verified, and, as described in the *Final Results*, the application of AFA to Gentile for these programs remains appropriate.[44] Thus, we made no changes to our calculation from the *Final Results*. While we continue to apply the same rate for this administrative review as we applied in the *Final Results*, this decision does not affect the cash deposit rate currently collected at the border for future entries of subject merchandise. Gentile's cash deposit rate assigned in the *Final Results* was superseded by the cash deposit rate of 0.94 percent calculated in the final results of the 2022 administrative review.[45] Further, Gentile is not subject to the 2023 or 2024 administrative reviews and, thus, 0.94 percent remains Gentile's current cash deposit rate.

## V.   FINAL RESULTS OF REDETERMINATION

Consistent with the *Remand Order*, Commerce further analyzed the inclusion of subsidy programs verified with the GOI, and we continue to find that the inclusion of all programs not previously found to be terminated or not countervailable is warranted.

1/23/2026

X *Chris J Abbott*

Signed by: CHRISTOPHER ABBOTT
Christopher Abbott
Deputy Assistant Secretary
 for Policy and Negotiations,
  performing the non-exclusive functions and duties
  of the Assistant Secretary for Enforcement and Compliance

---

[44] *See Final Results* IDM at Comment 1.
[45] *See Certain Pasta from Italy: Final Results of Countervailing Duty Administrative Review; 2022*, 89 FR 94708 (November 29, 2024).